THOMAS F. WHITESIDE, JR. v. THE STATE.

No. 12938. Delivered February 26, 1930.
Rehearing denied June 11, 1930.
Reported in 29 S. W. (2d) 399.

The opinion states the case.

*Sanders & McLeroy*, of Center, and *Jno. M. Cobb* and *Abe W. Wagner*, both of Houston, for appellant.

*O'Brien Stevens*, Crim. Dist. Attorney, of Houston, and *A. A. Dawson*, State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment confinement in the penitentiary for twenty years.

This is the second appeal, the opinion on former appeal being found in Volume 111, Texas Criminal Reports, at page 116.

Deceased was the wife of appellant. They occupied an upstairs apartment. According to the state's testimony appellant locked the doors leading from the apartment, attacked his wife with a hand mirror and threatened to kill her. Deceased became so terrorized and frightened that she jumped from an upstairs window to the ground below in order to escape. Her spine was broken and she died about three weeks later from the effects of the injury. Prior to the assault, some visitors to the apartment had been ordered by appellant to leave. It appears from the state's testimony, that these visitors were companions of appellant and that they had come with appellant to his apartment on the night in question. Deceased made a dying declaration. We quote the testimony of the attending physician, who was present when she made the declaration: "She gave her name and said she was the wife of Thomas Whiteside and said I had told her that she could not get well and that she wanted to make a statement and she made this statement as near as I can remember: 'Tom ordered the other people to leave the house' and that she tried to get them to stay at least until he partially sobered up but that he was mad and insisted that they leave, and they did leave. That immediately after they left Tom got up and locked all the doors to the apartment, made her undress entirely and made her get on the bed. Then he got a mirror and hit her on the side of the head, making a gash on the side of her head. At that time they

heard a girl out in the hall and Tom said: 'You are sending for the police are you.' 'He seemed to be afraid they were hearing him, and he made me move the mattress in the other room. Then he ran in the kitchen, saying he would finish me and I said, 'Oh, Tom, remember the babies' and he said 'G— d— you, you will never see the babies again when I get through with you tonight.' I saw him go to a drawer in the kitchen and then I ran to the window and jumped out." Deceased was found by neighbors, in a nude condition, below the window from which she had jumped. She had a wound on the side of her head near the top. There was testimony in the record of prior assaults and antecedent menaces on the part of appellant toward deceased. Appellant's testimony was to the effect that deceased, while overcome by hysteria, jumped from the window of her own volition. Appellant denied that he made any assault upon deceased and testified that she was in a nervous and hysterical condition when she jumped from the window. He said that he at no time threatened her with violence of any character.

On the former appeal we held the indictment sufficient to charge the offense of murder. Appellant renews his contention that the indictment charges no offense. We are unable to agree with him. The principle embraced in the statute and charge of the court is illustrated in Norman v. United States, 20 App. Cases, District of Columbia, 494. See also Wharton on Homicide, Third Edition, page 24; Russell on Law of Crimes, Seventh English Edition and First Canadian Edition, Vol. 1, p. 666.

Appellant filed a plea of former jeopardy, wherein he asserted that he should be exculpated from prosecution by virtue of the fact that on his first trial the court submitted homicide and the jury found him guilty of homicide, such submission and verdict being tantamount to acquittal of murder. In reversing the case on the former appeal, we held that there is no such offense as homicide and that the verdict of the jury finding appellant guilty of homicide was not responsive to the allegations of the indictment. The effect of the new trial in this case was to place the cause in the same position in which it was before any trial had taken place. The former verdict was a nullity. The law against former jeopardy was not offended against in the present conviction. Johnson v. State, 1 S. W. (2d) 896; Hewey v. State, 220 S. W. 1106.

Bill of exception No. 3 is concerned with the refusal of the court to grant appellant's application for a change of venue. It was averred in the application that there existed in Harris County so

great a prejudice against appellant that he could not obtain a fair and impartial trial. The state having filed a controverting affidavit, many witnesses pro and con were heard by the court. Their testimony presented conflicting theories. It is the rule that if conflicting theories as to prejudice arise from the evidence, the trial court has the discretion of adopting either theory, it being his duty to weigh the evidence. A judgment denying an application will not be disturbed on appeal unless it be made to appear that he abused his discretion. McNeeley v. State, 283 S. W. 522; Shelburne v. State, 11 S. W. (2d) 519. We are unable to reach the conclusion that the record reflects an abuse of the discretion vested in the trial court.

Appellant excepted to the failure of the court to limit in the charge the testimony of prior assaults and conduct of appellant to the question of motive or malice. It was unnecessary to limit this testimony. We quote from Branch's Annotated Penal Code of Texas, Section 1885 as follows:

"It is not necessary to limit testimony only going to prove a main issue in the case, such as defendant's motive and malice in the commission of the alleged offense for which he is on trial."

Many authorities are cited in support of the text, among them being Brown v. State, 24 Tex. Cr. App. 170; Terry v. State, 76 S. W. 928.

Appellant timely and properly objected to the charge of the court for its failure to instruct the jury to acquit appellant of murder unless they believed beyond a reasonable doubt that he had a specific intent to kill deceased. The court having instructed the jury fully on the subject of malice aforethought, the element of intent to kill seems to have been submitted.

Bill of exception No. 5 brings forward the complaint of the action of the trial court in permitting the district attorney to elicit from a witness that appellant had three children. We fail to see the relevancy and materiality of the testimony. However, the bill, as qualified by the trial court, discloses that other witnesses testified without objection that appellant had three children. Therefore if the testimony was inadmissible its receipt in evidence was harmless.

We find many bills of exception bringing forward complaint of the action of the court in permitting certain evidence to be introduced on the part of the state. The majority of these bills are insufficient in their recitals to manifest reversible error. Without specifying the bills by number, it is noted that a great many of the bills of exception contain mere grounds of objection to the reception

of certain testimony, with no certificate on the part of the trial court that the facts forming the basis of the objection were true. Such bills are manifestly insufficient to present reversible error. Buchanan v. State, 298 S. W. 569; Branch's Annotated Penal Code of Texas, Sections 207 and 209.

We deem it unnecessary to discuss all the numerous bills of exception found in this record. We have carefully examined every contention made by appellant and fail to find reversible error.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined ,by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

·HAWKINS, JUDGE.—In appellant's motion for rehearing it is the contention that the evidence fails to show appellant to be guilty of murder. This cannot with plausibility be predicated on a claim that the evidence does not support the averments in the indictment. This brings into review Art. 1206 P. C. (1925) application of which is seldom called for, and under which the indictment was drawn. It is not necessary to restate in detail the evidence. It has been sufficiently set out in the original opinion herein, and in the opinion on a former appeal. (111 Tex. Cr. R. 116, 12 S. W. (2d) 218.)

" 'Homicide' is the destruction of the life of one human being by the act, agency, procurement, or culpable omission of another." (Art. 1201 P. C. 1925.) Art. 1206 P. C. (1925) reads:

"Although it is necessary to constitute homicide that it shall result from some act of the party accused, yet if *words be used* which are *reasonably calculated to produce and do produce* an act which is the immediate cause of death, it is homicide; as for example, if a blind man, a stranger, a child, or a person of unsound mind, be directed by words to a precipice or other dangerous place where he falls and is killed; or if one be directed to take any article of medicine, food or drink, known to be poisonous and which does produce a fatal effect: in these and *like cases* the person so operating on the mind or conduct of the person injured shall be deemed guilty of homicide."

The article in question contains nothing new. It only made a part of our statutory law what had long been recognized as a sound legal principle in the common law and which finds expression in the

text books under substantially the same language as found in Art. 1206. It is stated in Corpus Juris, Vol. 29, page 1079 as follows:

"Defendant's act or omission need not be the immediate cause of the death; he is responsible if the direct cause results naturally from his conduct. The same is true if the direct cause is an act of the deceased himself reasonably due to defendant's unlawful conduct. In accord with the rule last stated, a person, who by actual assault or threat of violence causes another acting upon well grounded or reasonable fear or apprehension to do an act resulting in physical or corporeal injury causing his death, is responsible for the homicide. In order to fasten responsibility on him, however, it is essential that the fear or apprehension under which the deceased acted should have been well grounded or reasonable."

See also Wharton on Homicide (3d Ed.), Sec. 22, page 24; Russell on Crimes (International Ed.), Vol. 13, page 12; Russell's Law of Crimes (7th English Ed. and 1st Canadian Ed.), Sec. 4, page 665; Greenleaf on Evidence (15th Ed.), Sec. 142, page 164; Brill's Cyclopedia Crim. Law, Vol. 2, Sec. 604, page 1011.

Application of the principle contained in Art. 1206 P. C. and the texts referred to is illustrated in many cases. In Regina v. Pitts, English Common Law Rep. (1 Carrington & Marshman), Vol. 41, page 159, it was charged in one count that deceased fell into the water and was drowned in endeavoring to escape from an assault by the prisoner. The court said:

"A man may throw himself into a river under such circumstances as render it not a voluntary act; by reason of force applied either to the body or the mind. It becomes then the guilty act of him who compelled the deceased to take the step. But the apprehension must be of immediate violence, and well grounded, from the circumstances by which the deceased was surrounded; not that you must be satisfied that there was no other way of escape, but that it was such a step as a reasonable man might take."

In Regina v. Halliday, J. P. 54 (1890), page 312, the prisoner by threats caused his wife to be in such a state of terror that she got out of a window to escape, fell and broke her leg. He was convicted of maliciously inflicting grievous bodily harm on her. The facts are strikingly like those in the present case except in Halliday's case his act did not result in the wife's death. In Norman v. U. S., 20 App. Cases, District of Columbia, 494, death caused by falling into a canal while attempting to escape a violent assault by accused it was held to render him guilty of criminal homicide, deceased hav-

ing a well grounded belief that accused intended to take her life or inflict serious bodily injury upon her. In Thornton v. State, 107 Ga. 683, 33 S. E. 673, accused was held guilty of the murder of his wife if in an effort to escape his violence she fell into a ditch, death being caused by the fall. In Adams et al. v. People, 109 Ill. 444, 50 Am. Rep. 617, accused was held guilty of murder where by threats, intimidation and command he caused deceased to jump from a moving train which resulted in his death. In State v. Preslar, 48 N. C. 421, the court said:

"If, to avoid the rage of a brutal husband, a wife is compelled to expose herself, by wading through a swamp, or jumping into a river, the husband is responsible for the consequences; but, if she exposes herself thus, without necessity, and of her own accord, we know of no principle of law, by which he is held responsible, to the extent of forfeiting his life."

In Hendrickson v. Comm., 85 Ky. 281, 3 S. W. 166, 7 Am. St. Rep. 596, it was held that where the husband used such force and violence as caused his wife to leave the house from fear of death or great bodily harm, and she dies from exposure, the husband is not responsible for her death unless her fear was well grounded, and unless her death was the natural and probable consequence of her leaving the house under the circumstances.

Keaton's case, 41 Tex. Cr. R. 621, and Taylor's case, 41 Tex. Cr. R. 564, exemplify a principle closely related to that invoked in the present case. Keaton and Taylor and several others entered into an agreement to rob an express car. They compelled the engineer and Johnson the fireman (deceased) to leave the engine cab and accompany the robbers to the express car where they knew Johnson would be exposed to danger, and if resistance was offered the natural and probable consequence would be his injury or death. During the attempted robbery a passenger named Buchanan fired several shots at the robbers and killed Johnson. Keaton was held guilty of murder. The judgment in Taylor's case was reversed for reasons not pertinent here. Some of the authorities heretofore referred to are cited in the cases of Taylor and Keaton. In the course of what Judge Davidson wrote in the Taylor case, he said:

"It is immaterial in this case whether defendant or one of his associates killed Johnson, and it is also immaterial whether they or Buchanan killed him. If they placed Johnson, the fireman, in a position where he might be shot, knowing or believing that there was danger of his being shot, and he was shot by an outside or third

party, they would be just as responsible as if they themselves had fired the fatal shot. In this particular case they were warned in advance that they might be fired upon from the passenger end of the train. And, if Buchanan shot him under these circumstances, they would be responsible for the killing,—as much as if they themselves had fired the fatal shot."

It is not necessary to again copy the indictment. It is set out in the opinion on the former appeal. (See 111 Tex. Cr. R. 116, 12 S. W. (2d) 218.) In submitting the case to the jury the learned trial judge followed the averments in the indictment, and before they could convict required the jury to find from the evidence beyond a reasonable doubt that appellant threatened his wife, and with malice aforethought by threatening words and gestures, did so terrorize and frighten her that she had a well grounded apprehension that her life was then in danger at the hands of appellant, and that by reason of such apprehension she jumped from a window and thereby injured herself in such manner as caused her death, and that said threatening words and gestures of appellant were reasonably calculated to produce and did produce the act of the wife in jumping from the window. On the contrary, the jury were told appellant would not be guilty if the wife was hysterical and jumped from the window of her own volition, not caused by appellant's conduct; or if she was without well grounded fear of danger from appellant; or if the conduct of appellant did not cause or was not reasonably calculated to cause the wife to jump from the window.

By exception to the charge appellant advanced the claim and here urges that there should have been an instruction to the jury that although the appellant threatened the deceased and made an assault upon her which caused her to jump from the window and receive the injuries resulting in her death, he would not be guilty of murder unless at the time of the assault he had a specific intent to kill the deceased. The theory upon which the court dealt with the subject was in substance that if the appellant, with malice aforethought, by threatening words and gestures terrorized and frightened the deceased and caused her to have a well grounded apprehension that her life was then in danger at the hands of the appellant and that said alleged conduct was reasonably calculated to and did produce in her mind a condition of terror and fright and the well grounded belief that she was about to be killed by the appellant, and that in attempting to make her escape by jumping through the window she lost her life—a verdict of guilty would be justified. Article 1206

P. C., characterizes the results thus brought about as homicide. The acts done or words spoken in such case might be with or without malice and under our present murder statute the punishment for the resultant homicide be thus determined. If, as in this case, malice be appropriately averred and correctly submitted in the charge the jury might conclude on the facts that in what the accused did and said there was the intent that serious bodily harm or death should result.

A specific intent to kill is not in every case essential to support a conviction of murder. See Wharton on Homicide, 3d Ed., Sec. 87; Walker v. State, 28 Tex. Cr. R. 503. Many illustrative cases are cited in Keaton v. State, 41 Tex. Cr. R. 621, to which reference has already been made. If death result under certain conditions the law regards it as murder aside from the intent, for instance, Article 1325 P. C. provides, "Where death is occasioned by any offense described in this and the preceding chapter the offender is guilty of murder," the offenses referred to being arson and other wilful burning of property.

Article 1256 P. C., as amended by Acts 40th Leg. R. S., p. 412, defining murder, reads thus:

"Whoever shall voluntarily kill any person within this State shall be guilty of murder. Murder shall be distinguished from every other species of homicide by the absence of circumstances which reduce the offense to negligent homicide or which excuse or justify the killing."

Article 1206, P. C. already quoted herein was permitted by the Legislature to remain as now found in the statute. There is nothing in the present case to distinguish it as negligent homicide nor to excuse or justify appellant's conduct which brought about the death of his wife. Therefore the character of homicide described in Article 1206 P. C. is believed to be comprehended by the terms of Article 1256, supra. Under Article 1206 P. C. as interpreted and illustrated hereinabove, if the intentional acts and conduct of accused brought about a condition the reasonable and probable consequence of which might produce in the mind of deceased a well grounded belief that her life was in danger and in an effort to avoid such apparent consequences she was impelled to jump or throw herself from a window and was thereby killed, it amounted to, and in the law would be, an intentional killing.

Art. 45 P. C. (1925) reads thus:

"The intention to commit an offense is presumed whenever the means used is such as would ordinarily result in the commission of the forbidden act."

While improper ordinarily to give said article in charge to the jury it has been held in many cases construing it that a man is always presumed to intend that which is the necessary or even probable consequences of his acts unless the contrary appears. McCoy v. State, 25 Texas 42; Aiken v. State, 10 Tex. Cr. App. 612; High v. State, 26 Tex. Cr. App. 545, 10 S. W. 238. Other illustrative cases will be found collated in Vernon's Ann. Cr. Statutes of Texas, P. C., Vol. 1, Art. 45. This article reflects a general recognition of the same principle which is given special application in homicide cases by the terms of Art. 1206 P. C.

Because of the unusual nature of the case we have devoted considerable time to the investigation of the questions herein discussed. If effect is to be given to Art. 1206 P. C. in its relation to other portions of the statute relating to murder and homicide we find no reason to reach any different conclusion about this case than the one already announced.

The motion for rehearing is overruled.

*Overruled.*