George Edward WILSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 44175.

Court of Criminal Appeals of Texas.

Nov. 2, 1971.

Rehearing Denied Dec. 21, 1971.

Robert B. Maloney, Dallas, for appellant.

Henry Wade, Dist. Atty., and Harry J. Schulz, Jr., Asst. Dist. Atty., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

ODOM, Judge.

This appeal is from a conviction for the offense of murder; the punishment was assessed by a jury at life.

The record reflects that the deceased, Prezell Bennett, Jr., and Edward James Morgan were together during the afternoon of June 10, 1967. They were in Bennett's car and had gone to various places in Dallas, drinking beer. At approximately 8:15 P.M. on that date, they met the appellant at a drive-in. They agreed to give the appellant a ride home. On the way the three of them drove by the house of Floyd Ray Hair, a friend and relative of Bennett, where they visited for approximately thirty minutes at the car. Then Bennett, Morgan and the appellant proceeded to a party that was being given by a friend of Bennett and Morgan. At this party, Bennett and Morgan left the car and went inside but the appellant remained in the car. At approximately 9:30 P.M. Bennett and the appellant left, leaving Morgan at the party.

F. B. Kirton testified that on that evening, at approximately 10:00 P.M., from his back yard, he observed what he believed to be a fist fight in the street between two men. He heard one of them who was "down" say: "Don't hurt me any more, I'm dying." "You're killing me." "I'm dying." "Somebody please call the police."

Witness Kirton went inside his house and telephoned the police. When he returned to his back yard, he saw the man who had been "down" running to a house and the other person driving off in a car that had been nearby. The man he saw running to the house was Prezell Bennett, Jr., who fell upon the porch and died before the ambulance arrived on the scene. The cause of death was stab wounds.

Appellant contends that it was error to admit his oral statement into evidence.

The appellant was arrested at approximately 5:30 A.M. on June 11. At approximately 4:25 P.M. he was taken before a magistrate who gave the appellant a warning in compliance with Article 15.17 Vernon's Ann.C.C.P., and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.[1] Then the record reflects the following:

"Q. (By the Prosecutor) After you left Judge Bedford, did you have a conversation with the Defendant in the presence of Officer Norris?

"A. (By Detective Preston Parks) Yes sir.

"Q. After you left the Judge and before you started this conversation, did you do anything?

"A. Yes sir.

"Q. What was that?

"A. I warned the Defendant of his rights again and I told him the Judge had warned him, that I wanted to be sure that he understood that he didn't have to talk to us about the case and that he could have a lawyer at any time and if he didn't have the money for a lawyer, one would be appointed for him, and he didn't have to make any statement at all, but that if he did make one, it could be used against him in the trial of the case.

"Q. And after you told him that, did he seem to understand what you had said to him?

"A. Yes sir.

"Q. After that, what happened next?

"A. He said he wanted to tell us about it.

[1] He made no claim of indigency at this time and was represented at his trial by retained counsel.

\*    \*    \*    \*    \*    \*

"Q. Now, I want you to tell this Judge just exactly what he said to you about this case after having been warned.

"A. He said he had gotten with Prezell Bennett earlier in the evening on Saturday, June the 10th, down in South Dallas and they went over to this park and he asked Prezell if he would take him home so he could change his clothes, that he wanted to see his girlfriend, and that he told him that he'd give him fifty cents to take him home. And Prezell agreed and he took him to his house and George said he went in and Bennett sat in the car and that when he came out, he had two cans of beer, he brought Bennett one of the beers and he himself had one. And then he told him that he would give him a dollar to take him to his girlfriend's house and Bennett agreed to that and drove him over to the girlfriend's house and she wasn't there. And Bennett told him to give him the money and George reached in his pocket and didn't have quite a dollar, he just had some change, and Bennett looked at him and stopped the car and said, 'That's not what you told me you would give me.' And they got in an argument and he thought Prezell was going to hurt him and he got out his knife and they got into a struggle in the car and fell out on the ground—

"Q. Who got out his knife?

"A. George said he did. He said he was going to hurt him before he got hurt, and they fell out on the ground and he said Prezell started across the street and he drove the car on home and parked the car in the driveway and changed clothes and washed his hands and got in the car and left again.

"Q. Did you all ask him what he did with the car?

"A. Yes sir.

"Q. What did he tell you?

"A. He said when he came home that Sunday morning, that he parked the car around the curve on Glen Street."

Article 38.22, Sec. 1(e), Vernon's Ann. C.C.P., provides:

"The oral \* \* \* confession of a defendant made while the defendant was in jail or other place of confinement or in the custody of an officer shall be admissible if: \* \* \*

[it] be made orally and the defendant makes a statement of facts or circumstances that are found to be true, which conduce to establish his guilt, such as the finding of secreted or stolen property, or the instrument with which he states the offense was committed."

The record reflects that after the appellant stabbed the deceased, he got into the deceased's car and drove it away. At approximately 5:30 A.M. the next morning, he was arrested at his home in Dallas. Between 9 and 10 A.M. on that date the car was located by witnesses Morgan and Hair. A police officer was notified of the discovery of the car, and he took possession of such car which was located in the 1500 block of Glen Street, Dallas, and had the same placed in the Dallas Police car pound.

The appellant, after being warned of his rights by a magistrate and also by two police officers, waived such rights and gave the statement admitting that he had driven away in the deceased's car after he had stabbed the deceased and that he had left the car on Glen Street, some three blocks away from his home. Without knowing that the car had already been found and impounded, the officers went to the curve on Glen Street (the 1500

block) in search of the car. When they could not find the car, they called back to the office, whereupon the appellant again stated that he left the car at that location. Thereafter, the officers learned that the car had been previously removed by another officer.

In Turner v. State, 109 Tex.Cr.R. 301, 4 S.W.2d 58, 59, this court stated:

"It is not necessary that the fruits of the crime be found in precise place stated by accused, provided they were traced directly from that place to the locality where found under circumstances showing that they had been moved from where they had been left by accused."

See also Buchanan v. State, Tex.Cr.App., 453 S.W.2d 479; Tawater v. State, Tex. Cr.App., 408 S.W.2d 122; Daggett v. State, 39 Tex.Cr.R. 5, 44 S.W. 148.

We conclude that the trial court properly admitted appellant's oral confession into evidence; it led to the recovery of the stolen car.

■ Next, appellant contends that the confession should not have been admitted because the same was made on June 11, 1967, a date prior to August 28, 1967, the effective date of the statute under which it was admitted. The trial was conducted on July 8, 1968. The statute in effect on the date of trial controls since such statute sets forth a rule of procedure. A procedural statute controls litigation from its effective date. Neal v. State, Tex.Cr.App.,

400 S.W.2d 550. See also Bryant v. State, 457 S.W.2d 72 (Tex.Civ.App.—Eastland, writ refused n. r. e.).

■ Appellant further contends that the trial court did not comply with Article 38.22, Sec. 2, Vernon's Ann.C.C.P.,[2] in that the court's order concerning the voluntariness of the confession was "merely a conclusion of law."

It is noted that appellant did not challenge the voluntariness of the confession. His sole objection at the trial was: "The only objection I have, Your Honor, is that the confession was taken after the car was already found by the Dallas Police Department and taken to the pound and that it was not found by these officers." However, the careful trial judge conducted a, Jackson v. Denno[3] hearing on the voluntariness of the said confession and filed written findings on the issue. No error is shown.

■ Finally, appellant contends that the evidence was insufficient to sustain the verdict of murder with malice. This contention is based on the statement contained in the oral confession where he stated "that he thought Prezell was going to hurt him and he got his knife out to hurt him first." He contends that this established as a matter of law that he acted in self defense when he killed the deceased. Appellant, in his oral confession, admitted that the deceased did not threaten him and that the deceased did not have any kind of weapon.[4] Furthermore, the court charged the

---

2. Such Article provides in part: "In all cases where a question is raised as to the voluntariness of a confession or statement, the court must make an independent finding in the absence of the jury as to whether the confession or statement was made under voluntary conditions."

3. 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed. 2d 908.

4. "Q. Now, did he ever say anything, any words to the effect that Prezell had threatened him?

"A. No sir, he said he thought Prezell was going to hurt him and he got his knife out and hurt him first.

"Q. That he thought he was going to hurt him, but he didn't tell you anything that he said or did on the part of Prezell that caused him to feel that way, did he?

"A. No sir.

"Q. Did he ever tell you anything about Prezell having had any kind of weapon?

"A. No sir.

jury that, if they had a reasonable doubt as to whether such statement had been proved to be untrue, they were to acquit the appellant and say by their verdict not guilty. Also, the court charged on the law of self defense. These issues having been submitted to and resolved by the jury, no error is shown.

 By his pro se brief appellant contends that the punishment was "excessive and inconsistent in regards to offenses of murder similarly situated, and contrary to evidence adduced." We find no merit in this contention as the punishment assessed by the jury is within the statutory limits of the punishment set out by the legislature. See Article 1257, V.A.P.C.; see also Bass v. State, Tex.Cr.App., 468 S.W.2d 465.

There being no reversible error, the judgment is affirmed.

"Q. Did he ever tell you anything about —that Prezell actually did try to hurt him?

"A. No sir.

"Q. He simply told you, as you have told us, that he thought Prezell might try to hurt him and he got his knife out and tried to hurt him first, is that the way it was?

"A. Yes, sir."