**Donald Aaron SMITH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–86–00645–CR.**

Court of Appeals of Texas,
Dallas.

Oct. 21, 1987.
Discretionary Review Granted Feb. 24, 1988.

William A. Bratton, III, Richardson Allan Anderson, Dallas, for appellant.

Anne B. Wetherholt, Dallas, for appellee.

Before STEPHENS, STEWART and BAKER, JJ.

BAKER, Justice.

On an appeal from his conviction for murder, appellant, Donald Aaron Smith, contends, in twenty-one points of error, that he is entitled to a reversal of the conviction. We find that none of the points have merit and affirm the judgment.

This is an appeal of defendant's second conviction in this case. After his first conviction defendant appealed and we affirmed the judgment. *Smith v. State*, 667 S.W.2d 836 (Tex.App.—Dallas 1984). The Court of Criminal Appeals granted the appellant's petition for discretionary review, reversed the judgment and remanded for a new trial based upon the finding that the trial court abused its discretion in limiting appellant's voir dire examination of the jury panel. *Smith v. State*, 703 S.W.2d 641 (Tex.Crim. App.1985). Appellant's second trial resulted in his conviction, with punishment set by the jury at sixty years' confinement.

Appellant contends, in his first point, that the evidence is insufficient to support the jury's verdict under the court's charge of guilt or innocence. Appellant contends that he put on evidence, which was not rebutted by the State, that the deceased's death was caused by her fall from his moving vehicle. He further asserts that he did not intend to cause the deceased's death with any injury he inflicted upon her, and further that any injury that he inflicted upon her was not life threatening. Appellant states that the evidence must be measured against the court's charge, and due to a lack of evidence clearly disproving a

defensive theory of causation, the evidence is insufficient.

■ Appellant correctly states that the sufficiency of evidence to support a jury verdict is measured by the evidence adduced at trial and the law contained within the charge given the jury at the guilt/innocence stage of the trial. *Benson v. State*, 661 S.W.2d 708 (Tex.Crim.App.1983). *See also Boozer v. State*, 717 S.W.2d 608 (Tex.Crim.App.1986). Appellant concedes that the court's charge of causation under section 6.04(a) was not erroneous. *Barnette v. State*, 709 S.W.2d 650 (Tex.Crim. App.1986). *See also Whiteside v. State*, 115 Tex.Cr.R. 274, 29 S.W.2d 399 (1930). Therefore, the inquiry is whether the evidence is sufficient to convict appellant under the charge as given.

The sufficiency of the evidence is measured by the standard enunciated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979): "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Dickey v. State*, 693 S.W.2d 386 (Tex.Crim.App.1984). This inquiry is a question of law. It is irrelevant whether we as a court believe the evidence, or believe that the defense's evidence "outweighs" the state's evidence. If there is any evidence that establishes guilt beyond a reasonable doubt and if the trier of facts believes that evidence, we are not in a position to reverse the judgment on sufficiency of the evidence grounds. *Combs v. State*, 643 S.W.2d 709, 716 (Tex.Crim.App. 1982). *See also Moss v. State*, 574 S.W.2d 542 (Tex.Crim.App.1978).

■ The indictment charged the appellant with intentionally and knowingly causing the death of the deceased by beating her with his fists and kicking her with his feet. Viewing the evidence in the light most favorable to the verdict, the record reflects that the appellant and the deceased had been romantically involved approximately a year prior to the offense and that the deceased had been living with appellant at his home in Garland, Texas. Their relationship, however, had not been without difficulty, and approximately three to four weeks before the deceased died, she left appellant's home in Garland and moved in with the witness, Carol Jones. Jones testified that while the deceased was living with her, appellant would call every other night requesting the deceased to return to him and resume their relationship. In the early morning hours of March 15, 1982, Jones was awakened by the sounds of screams. When she opened her bedroom door, she observed the appellant beating the deceased and attempting to pull her out of the apartment by her arm and hair. Jones testified that, on this occasion, the appellant appeared angry and was attempting to injure the deceased. Appellant dragged the deceased from the premises but she returned to Jones' apartment shortly thereafter. Later in the day on March 15, 1982, the deceased appeared at Brenda Conn's residence. The deceased had gone there to hide and to keep her whereabouts secret from appellant. Conn then observed that the deceased's jaw was swollen and bruised. The deceased told Conn that her injuries were the result of the appellant's beating her.

Later that same evening, Joyce Rogers was baby sitting at Brenda Conn's home where the deceased was staying. This witness testified that appellant arrived at the Conn home at approximately 8:30 p.m. on the evening of March 15th. Shortly after appellant's arrival, Rogers heard a banging on the wall of the attached garage. Rogers testified that a woman, whom she identified as the deceased, was screaming, "sounding like she was getting the hell beat out of her." Rogers called Conn at work to tell her of the situation and Conn requested Rogers to call the deceased to the phone. Because of this request, Rogers opened the door to the garage and observed the appellant with the deceased. Appellant told Rogers that he and the deceased were having a discussion and the deceased told Rogers that she would be in the house in a few minutes. Rogers closed the door to the garage, and the screaming,

thudding and banging continued. When Rogers again called Conn, Conn told her to attempt to get the deceased to the phone. Rogers returned to the garage and again spoke to the deceased, who said that she would call Conn when she came in to the house. Rogers testified that the banging and thudding sounds had continued for approximately thirty to forty-five minutes. Rogers then called Conn's step-brother, James Kellerman, and informed him of the situation. When Kellerman arrived, both he and Rogers went to the garage. Rogers saw the deceased sitting in the passenger's side of her truck looking like she was propped up. She further testified that the deceased looked like she was not all there and that the deceased just stared straight ahead and did not move her eyes, head, or anything. Rogers observed that the deceased was badly beaten and that there was a substantial amount of blood on the garage floor and walls. Thereafter, deceased was observed to leave the premises in the deceased's truck with appellant driving the vehicle. A few hours later, deceased's body was found lying in the street.

Upon his arrest, appellant told the investigating officer that he had gone to the Conn house where the deceased was staying and beat her because he found out she had been to a motel with his best friend. He also said that after putting her into the truck in the Conn garage, he then drove with the deceased to an undeveloped area, took her out of the truck, and stomped and beat her some more. He said he then put the deceased back into the truck, took her to his house where he continued to beat her, and then took her into his own backyard, where he cut off some of her hair. He also told the officer that the deceased died sometime between 4:00 and 5:00 o'clock a.m., at which time he removed her clothes, loaded her in a sleeping bag, and then dumped her body on Shiloh Road.

The medical examiner's testimony regarding the autopsy results was extensive. The external examination showed considerable injury to the deceased's head, neck, trunk and extremities. The body showed approximately fifty blows. The medical examiner testified that the damage to the deceased was consistent with her having been beaten with someone's fists and kicked with someone's feet. The internal examination showed hemorrhages into the deep portions of the scalp. The brain itself was swollen and there was a marked hemorrhage on the left surface of the brain. The injuries caused a portion of the brain to push downward where it joins with the spinal cord into the areas where the spinal cord belongs. The medical examiner testified that the cause of death was acute craniocerebral injuries—injuries to the head and cranium—consistent with being beaten with fists or kicked with feet. He further testified that the pattern of injuries he observed on the deceased were inconsistent with those of a person who had jumped or fallen out of a vehicle travelling thirty to thirty-five miles per hour [the causation theory advanced by the defense]. After considering the evidence and resolving all conflicts and reasonable inferences in favor of the verdict, we hold that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Combs*, 643 S.W.2d at 716. Point number one is overruled.

In points two through five, appellant contends that the trial court erred in overruling his objections to the charges on the lesser included offenses of voluntary manslaughter, involuntary manslaughter, and criminally negligent homicide; and further contends that the trial court erred in failing to submit his form of requested charges on those lesser included offenses. Appellant was charged by indictment for the offense of murder under section 19.02, Texas Penal Code, alleging the cause of death was that appellant did beat the deceased with his fists and kicked her with his feet. During the trial, appellant, through his own and his medical expert's testimony, put forth the defensive theory that while he struck the deceased with his hands, the blow that caused her death occurred as a result of her jumping from the truck while travelling thirty-five miles per hour and striking

her head on the ground. Appellant asserts that such "alternate theory" of causation was a hotly contested issue at the guilt/innocence phase of the trial, as reflected by the closing arguments of counsel. Appellant complains that each of the trial court's jury instructions included only the State's theory of causation and failed to include the defensive theory of the causation. The trial court submitted not only a charge on murder, but also the lesser included offenses of voluntary manslaughter, involuntary manslaughter, and criminally negligent homicide. The appellant objected to the language of each of these charges, contending that the charge on the main offense, and each of the lesser included offenses, should include facts regarding his alternate theory of causation or language to the effect "that the acts of the defendant, if any, caused the deceased to jump from a moving vehicle...."

■ It is well-settled law in this state that a defendant is entitled to an affirmative defensive instruction on every issue raised by the evidence, regardless of whether it is strong, feeble, unimpeached, or contradicted, and even if the trial court is of the opinion that the testimony is not entitled to belief. *Warren v. State*, 565 S.W.2d 931, 933–34 (Tex.Crim.App.1978). Even the defendant's testimony alone may be sufficient to raise a defensive theory requiring a charge. *Cain v. State*, 549 S.W.2d 707, 713 (Tex.Crim.App), *cert. denied*, 434 U.S. 845, 98 S.Ct. 149, 54 L.Ed.2d 111 (1977). The trial court included in the charge to the jury not only the charge alleged in the indictment, but also the lesser included offenses referred to above. We hold that the court correctly charged on all of the requested lesser included offenses because the appellant was not entitled to inclusion of facts on the defensive theory of "alternate cause". Although a trial judge must charge the jury on defensive theories raised by the evidence, the denial of a defendant's requested instruction is not error where the requested instruction is an affirmative submission of a defensive issue which merely denies the existence of an essential element of the State's case. *Green v. State*, 566 S.W.2d 578, 584 (Tex.

Crim.App.1978). By charging the jury under section 6.04(a), Texas Penal Code, the trial court correctly charged the jury on concurrent cause. *Whiteside*, 29 S.W.2d at 402. The appellant's confession readily admitted that he administered several beatings to the deceased the night of her death. It was his contention, however, that she fell from the moving truck and that this caused her death. If the defendant's acts and conduct, as alleged in the indictment, caused her death, then the defendant is responsible even if there were other contributing causes.

■ Appellant was not entitled to a charge on an "alternate cause". Such is not a defensive issue that requires a separate and distinct charge to the jury. "Alternate cause" is simply a different version of the facts, one which negates at least one element of the State's case. *Barnette v. State*, 709 S.W.2d 650, 652 (Tex.Crim.App. 1986). We hold that the trial court did not err in failing to submit the instruction requested by the appellant. Even so, and despite *Barnette's* holding that no such submission was required, the record reflects that the trial court submitted an issue to the jury which stated "if you find from the evidence that the deceased ... came to her death from an injury inflicted by her own action in jumping from a moving vehicle, or if you have a reasonable doubt thereof, you will acquit the defendant." This charge fairly presented the appellant's defensive theory in substantially the same language as requested by the appellant and, therefore, no harm is shown. *DeBolt v. State*, 604 S.W.2d 164, 168 (Tex. Crim.App.1980). This was a hotly contested issue which the jury resolved adversely to the appellant. The jury may accept or reject any or all of the testimony and determine the weight it is to be given. This is the jury's function as a fact finder. *Lombardo v. State*, 503 S.W.2d 780 (Tex.Crim. App.1974). Having had a jury finding adverse to his contention, appellant cannot successfully complain on appeal of this circumstance. *Moss v. State*, 574 S.W.2d 542, 544 (Tex.Crim.App.1978). Points of error numbers two through five are overruled.

Appellant's points of error numbers six, seven, and eight complain of the court's charge at the punishment phase regarding the effect of the parole laws on the jury's verdict under article 37.07, of the Texas Code of Criminal Procedure. Specifically, appellant contends that such instructions are inherently confusing, place a condition upon the jury's consideration that is constitutionally prohibited, violate the separation of powers imposed by the Texas State Constitution, mislead the jury, and misstate applicable law. This court has previously decided these contentions adversely to the appellant in *Rose v. State*, 724 S.W.2d 832 (Tex.App.—Dallas 1987, pet. granted), and *Joslin v. State*, 722 S.W.2d 725 (Tex.App.—Dallas 1986, pet. granted). For the reasons stated in those two cases, appellant's points of error numbers six through eight are overruled.

In his ninth point of error, appellant argues that the court's jury charge, submitted pursuant to sections 4(a) and 4(b) of article 37.07, TEX.CODE CRIM.PROC., is inherently confusing and constitutes a comment by the court. To support this contention, appellant points out that the jury, while deliberating punishment, sent a note to the judge which read "[i]t appears to the jury that these two circled statements conflict. Are they supposed to be worded the same? If so, which wording is correct?"

The transcript shows that the jury charge contained two instructions on the parole laws. The first was submitted pursuant to section 4(a) of article 37.07, which requires that the instruction be given if the offense is one listed in section 3g(a)(1) of article 42.12, of the Texas Code of Criminal Procedure. Section 4(a) also requires an instruction if the defendant used or exhibited a deadly weapon. The second instruction was apparently given pursuant to section 4(b) of article 37.07 which requires that an instruction be given if the offense is a first degree felony. Appellant objected to the submission of both instructions as being inherently confusing. The alleged confusion apparently resulted from a slight difference that exists between the two instructions. The third paragraph of the section 4(a) instruction informs the juror that

good conduct time will not be considered by the parole board when it considers a defendant's eligibility for parole. Conversely, the section 4(b) instruction, in its third paragraph, states that good conduct time may be used as part of the parole board's consideration.

■ Appellant asserts that the jury's note regarding the two dissimilar paragraphs indicates that they were confused and that, therefore, he was harmed. He argues that reversal is required under *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim. App.1985). We disagree. In *Beasley v. State*, 721 S.W.2d 426 (Tex.App.—Houston [1st Dist.] 1986, no pet.), a similar argument was advanced by an appellant challenging the constitutionality of art. 37.07, sec. 4(b). In *Beasley*, as in the instant case, the jury sent a note to the judge asking for a clarification of the law. The defendant, pointing to the jury's note, contended that the alleged jury confusion resulted in sufficient harm to require reversal under *Almanza*. The court rejected the argument, holding that the alleged harm indicated by the note was not demonstrated by the record. *Beasley*, 721 S.W.2d at 428.

We are persuaded that the Houston Court of Appeals' reasoning in *Beasley* is applicable to the facts of this case. That two slightly differing instructions were included in the jury charge was *not*, in our view, calculated to injure appellant's rights. Moreover, appellant has failed to connect the jury's note to any actual harm he suffered. In his brief, appellant states that "[i]t requires little effort to see the harm that falls to appellant by submitting both instructions." To our minds, however, it requires more than a little effort, in fact several leaps of faith, to infer harm to the appellant from a reading of the jury's note. Because we do not find that appellant was harmed by the court's submission of the two instructions, we overrule his ninth point of error.

In point number ten, appellant asserts that the trial court erred in submitting the section 4(a) instruction to the jury because

the statutory predicate had not been met. He argues that the jury's finding that appellant used his fists to commit murder was not "a judgment containing an affirmative finding under Section 3(f)(2), article 42.12." We assume that appellant refers here to section 3g(a)(2) of article 42.12 which requires an affirmative finding by the jury that the defendant used or exhibited a deadly weapon.

■ A careful reading of the statutes, however, indicates that a section 4(a) parole instruction is triggered by a jury's affirmative finding that the defendant used a deadly weapon. Because the jury in this case found that appellant's use of his fists was the use of a deadly weapon, the instruction was properly submitted. Accordingly, we overrule his tenth point of error.

In point number eleven, appellant contends that the trial court erred in submitting to the jury at the punishment phase an instruction and special issue on whether "the fists" of appellant were a deadly weapon. Appellant contends that such findings under the facts and circumstances of this case were not the legislative intent of the statute authorizing such instructions. Appellant, in his argument, recognizes that the decision of the Texas Court of Criminal Appeals in *Turner v. State*, 664 S.W.2d 86 (Tex.Crim.App.1984), is contrary to his position, but entreats us to reconsider that opinion, to find error, and grant a new trial. Appellant is requesting this court to make the law rather than to follow it. This we cannot do, and we decline the request and overrule point eleven. *See Powell v. State*, 694 S.W.2d 416, 417 (Tex. App.—Dallas 1985, pet. granted).

Next, in point of error number twelve, appellant contends that the State was collaterally estopped from presenting a special issue and instruction to the jury for a finding of whether the hands of the appellant were deadly weapons in this case. As indicated earlier, this is an appeal on the second trial of this case. In the first trial there was no issue submitted to the jury on whether the appellant's fists were deadly weapons. Appellant asserts that the State, by its silence in the first trial litigated and

laid to rest the issue of deadly weapon. Appellant contends that the State was barred in the second trial from going back and attempting to relitigate the deadly weapon issue at this date. Appellant relies on *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), for the proposition that the double jeopardy clause of the Fifth Amendment to the United States Constitution incorporates collateral estoppel as a constitutional requirement and that, once an issue has been litigated, the re-litigation of that issue is barred. Appellant argues that the Texas Constitution imposes a similar burden on the State and relies on *Idrogo v. State*, 589 S.W.2d 433 (Tex.Crim.App. 1979), and *Turner v. State*, 518 S.W.2d 243 (Tex.Crim.App.1975).

■ Appellant states the rule correctly as to collateral estoppel, but the rule is not applicable in this case. In essence, the principle of collateral estoppel dictates that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. *Ashe*, 397 U.S. at 443, 90 S.Ct. at 1194. The issue, therefore, is whether in the first trial there was a jury determination on an ultimate issue of fact, i.e., whether appellant's hands were a deadly weapon. The record reflects that this issue was not decided by the jury during the first trial. The essential problem with the collateral estoppel argument advanced by appellant is that there was not an affirmative finding of the aggravating factor. Thus, there was never any conclusive decision by the jury on this factual issue to act as a bar by way of estoppel. *Padgett v. State*, 717 S.W.2d 55, 57 (Tex.Crim.App.1986). Based on *Padgett*, we hold that "silence by the State" does not equate to an affirmative finding on appellant's behalf on this issue. Point of error number twelve is overruled.

In point number thirteen, appellant asserts that the submission of the deadly weapon issue to the jury was error because the submission punished the appellant for exercising his right to appeal. On the first conviction the jury assessed punishment at fifty years' confinement. At this trial, the

jury assessed punishment at sixty years' confinement. Relying on *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), appellant contends that this increased punishment is constitutionally prohibited. *North Carolina v. Pearce* concerned a situation where a defendant was originally sentenced by the trial judge to prison for a term of twelve to fifteen years. Several years later, the defendant initiated a state post-conviction proceeding which culminated in the reversal of his original conviction. Upon the second trial, before the court, he was convicted and sentenced by the trial judge to an eight-year prison term. When this time was added to the time that defendant had already spent in prison, the result was a longer total sentence than that originally imposed.

■ The issue in *North Carolina v. Pearce* was whether the constitution limits the imposition of a more severe punishment upon retrial after conviction for the same offense. The Supreme Court noted that the constitutional guarantees against double jeopardy impose no restrictions upon the length of a sentence assessed upon reconviction. The Court pointed out that for many years it had been settled that double jeopardy imposed no limitation whatever upon the power to re-try a defendant who has succeeded in getting his first conviction set aside. *North Carolina v. Pearce*, 395 U.S. at 720, 89 S.Ct. at 2078. Furthermore, a corollary of the power to re-try a defendant, is the power, upon the defendant's reconviction, to impose whatever sentence may be authorized, whether or not it is greater than the sentence imposed after the first conviction. *Id.* The rationale for this power, it was stated, rests ultimately on the premise that the conviction was, at the defendant's behest, wholly nullified and the slate wiped clean. The Court held that neither the double jeopardy provision nor the equal protection clause imposes an absolute bar to a more severe sentence upon conviction. The Court went on to say, however, that despite this holding that did not end the inquiry because the imposition of a penalty upon a defendant for having successfully pursued a statu-

tory right of appeal would be a violation of due process. A new sentence, with enhanced punishment, based upon the rationale of punishing for successful appeal, would be a flagrant violation of the rights of a defendant. The Court then concluded that due process of law requires that vindictiveness against a defendant for successfully attacking his conviction must play no part in the sentence he receives in a new trial. To assure the absence of such a motivation, the Court held that whenever a judge imposes a more severe sentence upon a defendant after a new trial the reasons for his doing so must affirmatively appear, and the factual data upon which the increased sentence is based must be made a part the record so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal. *North Carolina v. Pearce*, 395 U.S. at 726, 89 S.Ct. at 2081. *North Carolina v. Pearce* set the standard in 1969. In 1973, however, the United States Supreme Court held in *Chaffin v. Stynchcomb*, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973), that due process of law does not require an extension of *Pearce* restrictions to jury sentencing. In *Chaffin*, the precise issue was whether, in those states that entrust the sentencing responsibility to the jury, the due process clause of the Fourteenth Amendment bars the jury from rendering higher sentences on retrials following reversals of prior convictions. The Court held that due process does not require extension of *Pearce* restrictions to jury sentencing. The Court said that the jury's rendition of a higher sentence upon retrial does not violate the double jeopardy clause, nor does it offend due process so long as the jury is not informed of the prior sentence and the second sentence is not otherwise shown to be a product of vindictiveness. *Chaffin*, 412 U.S. at 36, 93 S.Ct. at 1987. As previously noted, a jury assessed punishment in both the first and second trials in this cause. Appellant does not contend that the jury was aware of the prior sentence in the first trial or that the second sentence imposed was a product of their vindictiveness. Point number thirteen is overruled.

**512**

Appellant next complains, in point number fourteen, that the trial court erred in admitting the testimony of Dr. Clay Griffith. He contends that the testimony the doctor gave on the results of his mental status examination of the appellant in the Dallas County jail was done without a trial court order authorizing the examination and that disclosure of the results of the communications made by him to Dr. Griffith were privileged under article 5561h, of the Revised Civil Statutes. First, the trial court's power to appoint a psychiatrist to examine a defendant who is asserting insanity as a defense is derived from article 46.02, of the Texas Code of Criminal Procedure. That article does not require the entry of a written order prior to the appointment of such psychiatrist or prior to his examination of a defendant in such case. *See Gardner v. State*, 733 S.W.2d 195, 200 (Tex.Crim.App.1987). We hold that a written order was not necessary to authorize Dr. Griffith's examination. Second, appellant relies on *Chacko v. State*, 630 S.W.2d 842 (Tex.App.—Houston [1st Dist.] 1982, no pet.), *C.V. v. State*, 616 S.W.2d 441 (Tex.Civ.App.—Houston [14th Dist] 1981, no pet.), and *Salas v. State*, 592 S.W.2d 653 (Tex.Civ.App.—Austin 1979, no pet.), to support his assertion that the examination was a privileged communication by virtue of the provisions of art. 5561h. We note that each of the cases upon which appellant relies was tried and decided prior to 1983. Effective September 1, 1983, section 4(a) of art. 5561h was amended to provide the following exception: "Section 4(a) exceptions to the privilege in court proceedings exist: ... (5) in any criminal prosecution where the patient is a deceased, witness, or defendant...." Act of September 1, 1983, ch. 511 § 2, 1983 TEX. GEN.LAWS 2970, 2973. The conversations between appellant and Dr. Griffith occurred on July 15, 1982. This case went to trial for the second time on May 19, 1986, and the communications were admitted into evidence during the course of this trial. Thus, the communications were privileged when made, but not when admitted at trial. Of course, it is arguable that this exception was not applicable because it was not in effect when the communication was made. However, we hold that such argument, if made, is without merit. In the absence of an expressed intent to the contrary, a procedural statute is operative from its effective date. *Wilson v. State*, 473 S.W.2d 532, 535 (Tex.Crim.App.1971). A rule relating to the admission of evidence is procedural. *See Wilson v. State*, 473 S.W.2d 535. The Texas Supreme Court has stated that the privilege created by art. 5561h "relates to the admissibility of evidence and is procedural in nature." *Ex parte Abell*, 613 S.W. 2d 255, 262 (Tex.1981). On this authority, we hold that art. 5561h is a procedural rule because it relates to the admissibility of evidence and that it was applicable to pending litigation as of its effective date. Therefore, the amended section provided an exception to the privilege at the time of trial. The trial court did not err in admitting Dr. Griffith's testimony. Point number fourteen is overruled.

In point of error number fifteen, appellant contends that it was error to admit the oral statement he gave to investigator Pat Martinkus. Appellant's basis for this contention is that his arrest on March 16, 1983, was illegal and, therefore, the subsequent oral statement was tainted and rendered inadmissible. This same question of law was presented by appellant in his former appeal. *See Smith v. State*, 667 S.W.2d 836, 839 (Tex.App.—Dallas 1984), *rev'd on other grounds*, 703 S.W.2d 641 (Tex.Crim. App.1985). In his former appeal, this Court decided the question adversely to appellant. The State contends that this Court's prior decision establishes the "law of the case" and that, therefore, appellant cannot raise this point upon his retrial or upon appeal of his retrial.

The general rule is that the decision of an appellant's tribunal on appeal, unless clearly erroneous, is binding upon a subsequent appeal of the same case, to the same court, upon the same evidence, and under the same pleadings. *Massey v. Lewis*, 281 S.W.2d 471, 475 (Tex.Civ.App.—Texarkana 1955, writ ref'd n.r.e.); *Hillhouse v. Allumbaugh*, 258 S.W.2d 826, 828 (Tex.Civ. App.—Eastland 1953, writ ref'd n.r.e.);

*Manziel v. Humble Oil & Refining Co.,* 214 S.W.2d 797, 798 (Tex.Civ.App.—Texarkana 1948, writ ref'd n.r.e.). We hold that the decision on this point of law in the prior appeal is not clearly erroneous and, as a result, the general rule applies in this case. *See Granviel v. State,* 723 S.W.2d 141 (Tex.Crim.App.1986). Point number fifteen is overruled.

In points of error numbers sixteen and seventeen, appellant contends that the trial court erred in permitting improper cross-examination of the witnesses Dr. Tom Williams and Dr. John F. Yost. Appellant called these two witnesses as experts on the issue of the appellant's insanity. Both of these witnesses had examined the appellant for the purpose of performing a psychological forensic evaluation. The witnesses, as a result of their examinations, reached the diagnosis that appellant suffered from a post-traumatic stress disorder and chronic depression secondary to the post-traumatic stress disorder. They concluded that the appellant, as a result of this mental disease, was unable to distinguish right from wrong and could not conform his conduct to the requirements of law. During the prosecutor's cross-examination of both witnesses each was asked whether they were familiar with Dr. James Grigson's written report of his examination of appellant. Dr. Grigson was an expert witness who had been retained by appellant to make a diagnosis concerning his sanity. Both Williams and Yost testified that they were aware of Dr. Grigson's written opinion and had considered it in their diagnosis of the appellant. Over appellant's objections, the prosecutor was permitted to elicit from each of the witnesses that Dr. Grigson's report had concluded that the appellant was sane. Appellant objected to the admission of this testimony on the basis that Dr. Grigson's opinion was hearsay, that the method of the impeachment was improper, that it violated the privilege provided by art. 5561h, and that it deprived appellant of his right to confront and cross-examine witnesses under the Sixth and Fourteenth Amendments of the United States Constitution, and article 1 section 10 of The Texas Constitution. The trial court overruled these objections and permitted the testimony.

The State counters these arguments by contending that appellant opened the door to such cross-examination by direct examination of the two expert witnesses. The State asserts that both of these witnesses testified they had reviewed Dr. Grigson's report and had considered it in making their conclusions and diagnosis.

The appellant relies on *Williams v. Texas City Refining Inc.,* 617 S.W.2d 823 (Tex. Civ.App.—Houston [14th Dist.] 1981, writ ref. n.r.e.), and *Lopez v. State,* 628 S.W.2d 77 (Tex.Crim.App.1982). The State counters with its argument that article 38.24 of the Texas Code of Criminal Procedure (now TEX.R.CRIM.EVID. 107) is the applicable statutory authority, and supports this assertion by relying on *McMinn v. State,* 640 S.W.2d 86 (Tex.App.—Ft. Worth 1982, pet. ref'd).

Article 38.24 provided, in part, that when part of an act, declaration, conversation or writing is given in evidence by one party, the whole on the same subject may be inquired into by the other, as when a letter is read, all letters on the same subject, between the same parties, may be given. The purpose of this article is to reduce the possibility of the fact finder receiving a false impression from hearing the evidence of only part of an act, declaration, or writing. *Roman v. State,* 503 S.W.2d 252 (Tex. Crim.App.1974).

The record reflects that appellant's direct examination of the two expert witnesses did encompass testimony that they both considered Dr. Grigson's report in making their diagnosis. Thus, this direct examination opened the door for cross-examination by the prosecution. Although one or more of appellant's objections to the admission of this cross-examination testimony might, standing alone, be valid, it is well established that such evidence when used to fully explain a matter opened up by the other party need not ordinarily be admissible. *Parr v. State,* 557 S.W.2d 99, 102 (Tex.Crim.App.1977). *See also Lucas v. State,* 479 S.W.2d 314, 315 (Tex.Crim.App.

1972). We have reviewed both cases cited by the appellant and find both readily distinguishable. We hold that the testimony was admissible and overrule points of error numbers sixteen and seventeen.

Appellant next contends, in point of error number eighteen, that the trial court erred in not requiring the prosecution to produce a list of witnesses contacted by the prosecution and used before the jury. Appellant asserts that, at a hearing held after the State rested its case in chief, it was determined that the prosecution had developed a list of witnesses who had been contacted but were not called as witnesses during trial. Appellant contends that during closing argument the prosecutor referred to these non-testifying witnesses and stated that none of these witnesses had any evidence that would help the appellant. At the conclusion of the argument, and again in his new trial motion, appellant urged that the trial court erred in failing to require the prosecution to disclose the names of the witnesses contacted by the prosecutor, and "used before the jury" at trial. Appellant asserts that the "use before the jury" rule entitles him to inspect, upon timely request, any document, instrument or statement which has been used by the State before the jury in such a way that its contents become an issue. Appellant's statement of the rule is correct and is supported by the authorities he cites. *See Stahl v. State*, 712 S.W.2d 783, 789, (Tex. App.—Houston [1st Dist.] 1986, pet. granted). However, we conclude that the rule is not applicable.

Generally, a defendant is not entitled to pretrial discovery of written statements of witnesses that constitute the State's "work product." TEX.CODE CRIM.PROC.ANN. art. 39.14 (Vernon 1979). "Work product" includes prosecution files and papers; police, offense, and investigation reports; work sheets; and factual memoranda concerning a defendant's arrest or the State's investigation of the case. *See Brem v. State*, 571 S.W.2d 314, 322 (Tex.Crim.App.1978). Two rules control when a defendant may inspect documents, reports, and statements in the

State's possession that are otherwise not discoverable: (1) under the "Gaskin Rule," a defendant has the right to examine the written statement or report of a prosecution witness for the purpose of cross-examination and impeachment, if a demand for inspection has been made after the witness has testified on direct examination, *see Gaskin v. State*, 172 Tex.Crim.R. 7, 9, 353 S.W.2d 467, 469 (1961) (Op. on reh'g); and (2) the "use before the jury" rule provides that a defendant has the right, upon specific and timely request, to inspect any documents, reports, or statements that have been used before the jury in such a way that the contents become an issue. *Mendoza v. State*, 552 S.W.2d 444, 447 (Tex.Crim. App.1977). During oral argument the appellant conceded that the "Gaskin rule" is not applicable. However, appellant contends that the "use before jury" rule is applicable to this circumstance.

This rule is not applicable unless certain conditions are met. First, the rule comes into play only through the State's use of the document or statement at trial. *Haywood v. State*, 507 S.W.2d 756 (Tex. Crim.App.1974). Second, the instrument or statement must be used before the jury in such a way that its contents become an issue. *Mendoza*, 552 S.W.2d at 448. The rule does not permit a defendant to inspect statements or documents that are not brought to trial, testified from, brought to the attention of the witness, read aloud to the witness, or brought to the jury's attention as the basis for the examination of the witness. *See Mendoza*, 552 S.W.2d at 448. Since the purpose of the rule is to allow the defense an opportunity to inspect documents used by the prosecution before the jury for the purpose of cross-examination and possible impeachment, the rule would not be applicable during counsel's oral argument, and it is so held. *See Jones v. State*, 493 S.W.2d 933, 937 (Tex.Crim.App. 1973). We overrule point number eighteen.

In points of error numbers nineteen and twenty, the appellant contends that the trial court erred in not admitting his exhibits numbers six, nineteen, and twenty. Exhibit number six was a video tape recording

regarding the differences between servicemen in World War II combat and in Vietnam combat. Exhibits numbers nineteen and twenty consisted of two portions of the move *Apocalypse Now.* The admissibility of defendant's exhibit six arose during appellant's direct examination of his expert Dr. Tom Williams. Dr. Williams testified as to the effects of post-traumatic stress disorder on veterans of World War II and Vietnam. He delineated specific differences between the effects of combat on veterans of these two wars. He then testified that the tape marked as exhibit six explains and illustrates his testimony regarding these differences. Appellant asserts that Dr. Williams was actively involved in making the tape. Appellant urges on appeal that the video tape is admissible evidence, demonstrative of the testimony of Dr. Williams, and, as such, is helpful to the jury's understanding the testimony of that expert witness.

Both Dr. Williams and Dr. Yost, the appellant's expert witnesses, testified about appellant's post-traumatic stress disorder and explained that the viewing of the film *Apocalypse Now* was the triggering mechanism for appellant becoming symptomatic under this disease which directly affected his ability to differentiate right from wrong and to conform his conduct of the requirements of the law at the time of the incident alleged in the indictment. Two portions of that film were highlighted as having a particular effect on appellant, and these were exhibits nineteen and twenty which appellant sought to introduce.

Appellant urged the same grounds of admissibility for these two exhibits as he did for exhibit six. The State countered by contending that appellant failed to establish the proper predicate for the admission of exhibit number six; and secondly, regarding all three exhibits, that admissibility is discretionary with the trial court and no abuse of discretion was shown.

Although it is clear that photographs and similar matters are admissible to aid the jury in interpreting and understanding testimony adduced at trial, a determination as to the admissibility of such evidence is made upon the same basis as is a decision on the admissibility of other types of evidence and is largely within the trial judge's discretion. *Lanham v. State,* 474 S.W.2d 197 (Tex.Crim.App.1971). An appellate court should not disturb the trial court's decision absent a clear abuse of discretion. The appellant and both of his expert witnesses testified fully and completely about appellant's alleged mental disorder, the triggering mechanism, and the very issues to which appellant sought to introduce demonstrative evidence. Since these witnesses' testimony fully developed the appellant's theory of insanity, we conclude that no abuse of discretion has been shown, and so hold. *See Nilsson v. State,* 477 S.W.2d 592, 599 (Tex.Crim.App.1972). Points of error nineteen and twenty are overruled.

In his final point of error, appellant contends that the prosecution was guilty of making improper remarks, asking improper questions, and engaging in improper conduct such that the prosecutor demonstrated that his desire was not to see that justice was rendered, but rather to inflame and prejudice the minds of the jury. Appellant relies on this Court's decision in *Dakin v. State,* 632 S.W.2d 864 (Tex.App.—Dallas 1982, no pet.), to support his contention. In his brief, the appellant asserts ten different areas of examination and jury argument by the prosecutor as errors. These specific instances comprise twenty-one pages in appellant's brief. Appellant concedes that he, in most instances, objected and the trial court sustained his objections and instructed the jury to disregard.

The State counters this argument by asserting that the instructions to disregard were sufficient to cure the error, if any, or alternatively, that the point is multifarious and preserves nothing for appellate review. The State relies on *Euziere v. State,* 648 S.W.2d 700 (Tex.Crim.App.1983), and *Davis v. State,* 687 S.W.2d 78 (Tex.App.—Dallas 1985, pet. ref'd), in support of its position.

In this point of error appellant asserts at least ten areas of alleged misconduct by the prosecution. The brief, in assignment of error, must state the grounds separate-

ly. *Jackson v. State,* 516 S.W.2d 167, 173 (Tex.Crim.App.1974). This point of error is multifarious and therefore preserves nothing for review. *Euziere v. State,* 648 S.W.2d at 703; TEX.CODE CRIM.PROC. ANN. art. 40.09(9) (Vernon Supp.1985) (Now codified in Texas Rules of Appellate Procedure, Rule 50). Despite this deficiency we will consider the appellant's contentions on the merits.

■ Appellant asserts that the prosecutor's overall conduct amounted to "cumulative error," and that the overall prejudice was not susceptible to "cure" by a simple instruction to the jury to disregard. In the vast majority of cases in which testimony comes in or argument is made, deliberately or inadvertently, which has no relevance to any material issues in the case, and which carries with it some definite potential for prejudice to the accused, this Court relies on an appellate presumption that an instruction to disregard evidence will be obeyed by the jury. *See* 1. R. Ray, *Texas Practice, Law of Evidence,* § 29 (3d ed. 1980); *Thompson v. State,* 612 S.W.2d 925 (Tex.Crim.App.1981). Thus, we say the harm derived from the testimony or argument complained of has been "cured." This is true except in extreme cases where it appears that the argument or evidence is clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced in their minds. Whether a given case fits the exception or the rule depends upon its particular facts. *Gardner v. State,* 730 S.W.2d 675, 696 (Tex.Crim.App.1987). We have reviewed all of the statements, questions, conduct and arguments quoted by the appellant and conclude that they do not rise to the level of the conduct complained of by the appellant in *Dakin v. State.* We therefore overrule point number twenty-one.

The trial court's judgment is affirmed.