**Donald Aaron SMITH, Appellant,**

v.

**The STATE of Texas.**

No. 409–89.

Court of Criminal Appeals of Texas, En Banc.

Dec. 11, 1991.

William A. Bratton, III, Richard Alan Anderson, Dallas, for appellant.

John Vance, Dist. Atty. & Anne B. Wetherholt, David Jarvis & Dan Hagood, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

PER CURIAM.

The issue in this cause is made by *"Rose* error." See *Rose v. State,* 752 S.W.2d 529 (Tex.Cr.App.1988). Conducting the sort of harm analysis done on rehearing in *Rose,* at 554 the court of appeals concluded the error did not contribute to punishment. *Smith v. State,* 764 S.W.2d 31 (Tex.App.— Dallas 1989).[1] We granted review to deter-

---

1. A chronological history of this litigation is reflected in a series of prior decisions identified by the Dallas Court of Appeals in *Smith v. State,* supra, 764 S.W.2d at 32.

We observe that when appellant was first tried in 1982 the jury rejected his sole defense of insanity and then assessed punishment at fifty years confinement *sans* a mandatory parole law

mine whether with the proper appellate undertaking a reviewing court could say beyond a reasonable doubt that the erroneous submission of unconstitutional parole law instructions made no contribution to the punishment assessed here. *Arnold v. State,* 786 S.W.2d 295, at 313 (Tex.Cr.App. 1990).

The offense is murder; the surrounding facts were recounted at length by the court of appeals to find the evidence sufficient to convict. *Smith v. State,* 740 S.W.2d 503, at 506–507 (Tex.App.—Dallas 1987), judgment vacated on *"Rose"* grounds and cause remanded, 761 S.W.2d 22 (Tex.Cr. App.1988). Those facts need not be iterated here; suffice to say that appellant, a forty year old Vietnam veteran who personally and through experts presented to the jury in graphic detail his Marine Corps service and post-traumatic stress disorder, terminated a yearlong sometimes stormy romantic relationship with a female companion when he caused her death by beating her with his fists and kicking her with his feet. *Smith,* 740 S.W.2d, at 506, 513, 515.

The court of appeals also addressed certain facts of the punishment hearing on two occasions, *viz:* on direct appeal in

*Smith v. State,* supra, at 509; on remand in *Smith v. State,* 764 S.W.2d 31, at 33 (Tex.Cr.App.1989). Pertinent to an *Arnold* analysis are, e.g., that there was no mention of parole during voir dire; that the prosecution presented no new evidence (nor did appellant); that appellant leveled several objections to instructions under §§ 4(a) and 4(b); that there was no mention of parole law during jury argument, "except for a passing reference by appellant's counsel;" that during deliberations "the jury sent two notes asking questions about the parole and good time instructions." *Ibid.*[2]

The jury deliberated from 2:05 p.m. to 8:00 p.m. At a time not indicated in the record the jury sent its first note, *viz:*

"What is the definition of a 'life sentence'? Does parole apply?, If so, how is it applied."

The judge responded that "all the law and facts you are entitled to receive at this time" are in the charge of the court, and asked it to "continue your deliberations." Tr. 69; 13 SF 49.

At 6:35 p.m., the jury sent out the second note referring to parts of §§ 4(a) and 4(b) instructions in the charge, *viz:*

"It appears to the jury that these circled statements conflict. Are they supposed to be worded the same. If so,

---

instruction—of course, the Legislature did not dictate one be given until Acts 1985, 69th Leg., Ch. 576, p. 2195, § 1, effective September 1, 1985. At his second trial in 1986 the jury again rejected his insanity defense and assessed punishment at sixty years—this time with instructions under *both* §§ 4(a) and (4)(b) of Article 37.07, V.A.C.C.P., given over his objections and evoking notes evincing some uncertainty among jurors. See *Smith v. State,* supra, at 33.

2.  Having never been convicted of felony, appellant applied for probation, and the court submitted that issue to the jury.

The indictment charged that appellant caused death by beating with fists and kicking with feet, but did not allege either to be deadly weapons. A special issue on deadly weapon was not submitted to the jury in the guilt phase.

In response to certain objections by appellant to the draft charge on punishment, the judge decided to give a § 4(b) instruction (actual time *plus* good conduct time), followed by a special issue as to fists being a deadly weapon, and then submit a § 4(a) instruction (actual time *without* consideration of good conduct time).

At the outset of argument the opening prosecutor told the jury "we are going to ask you for life and $10,000, the maximum authorized by law," and thus be sending various messages; he also urged an affirmative answer to the special issue and added, "We would ask you to assess a punishment of life, not 99 years, not 99 years but life and $10,000[.]" He and the closing prosecutor argued in effect that less than the maximum would send the wrong message.

Counsel for appellant basically asked the jury to provide an opportunity for rehabilitation rather than to seek retribution.

The charge provided alternative verdict forms, *viz:*

1.  Assess punishment at confinement for life.

2.  Assess punishment at confinement for life and a fine of $____.

3.  Assess punishment at confinement for ____ years.

4.  Assess punishment at confinement for ____ years and a fine of $____.

5, 6, & 7. Recommendations for probation.

which wording is correct." [3]

Appellant moved for a mistrial, arguing that this note shows "exactly the objections" previously made and that the jurors "are looking through those aspects of the law and instructions that have been circled that the Court read into the record and are looking at what would be the result of their verdict." Denying the motion, and over objections, at 7:15 p.m. the judge responded in like vein as before, also asking the jury to "read the Charge carefully." Tr. 69; 13 SF 50–57.

The jury answered the special deadly weapon issue "yes" and its foreman completed and signed the verdict form assessing punishment at sixty years confinement. See note 2, *ante*

In *Arnold v. State*, supra, this Court discerned from its own experience and prior cases that "[r]egardless of admonitions, argument or other incidents may induce jurors to consider and apply parole law and good conduct time in assessing punishment[.]" *Id.*, 786 S.W.2d at 304. Accordingly, we concluded:

"Patently, when a jury sends out a note making an inquiry of some sort related to parole, it reveals that jurors are then and there 'discussing' and 'considering' the subject. [citations omitted]. Such an important factor in the harm analysis cannot be easily dismissed. Whether a jury has progressed to the point of no return, so to speak, in the sense of 'risk that punishment will be based on extraneous considerations,' *Rose*, supra, [752 S.W.2d] at 537, depends on circumstances of a given case. But when it appears the jury passed the point, reasons for finding no risk and to justify the punishment must be more than a subjective view of the facts of the

offense and a prior criminal record. [citation omitted]."

*Id.*, 786 S.W.2d at 305.

So here the first note demonstrates beyond peradventure that the jury had *parole* on its collective mind. The prosecutors had demanded, "not 99 years, not 99 years but life and $10,000," "the maximum punishment authorized by law" for this forty year old Vietnam veteran. Because prosecutors implied that "life" is somehow different from "99 years" and neither they nor the charge on punishment explained ramifications of a "life sentence," quite naturally conscientious jurors felt a need to have "the definition of a 'life sentence' " and to know whether parole applies to a "life sentence" and, if so, "how is it applied." But by being directed back to the charge without obtaining an understanding of what life sentence means, jurors were left to their own devices.

As their second note manifests, jurors did read and carefully study the parole law instructions, finding what seemed to them to be a "conflict" in the two circled statements of the "one-third rule." See *Arnold*, at 306. Presumably following the suggestion from the court to "read the charge carefully," in fairly short order the jury returned a verdict assessing punishment of sixty years, thus satisfied that appellant would serve at least twenty years and perhaps be released on parole at age sixty.

In *Arnold* the Court expressly pointed out that "a jury note requesting specific information concerning [parole law] will strongly support an inference that the jury did indeed consider the parole law, and when it assesses a term of years consonant with the 'one-third rule' there can be no doubt." *Id.*, at 313, n. 26.

---

**3.** The first circled statement from the charge reads:

"Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served *plus any good conduct time earned* equals one-third of the sentence imposed or 20 years, whichever is less."

The second circled statement from the charge reads:

"Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-third of the sentence imposed or 20 years, whichever is less, *without consideration of any good conduct time he may earn.*"

Accordingly, having assayed extant factors and circumstances germane to punishment for "a likelihood that constitutional error conducive to introduction of offending parole law matters into environment of a punishment hearing affected jury deliberations, and thereby influenced jurors in assessing the terms of punishment reflected in their verdict," we conclude that a rational reviewing court would be unable to declare beyond a reasonable doubt that the error made no contribution to punishment. *Ibid.*[4]

Therefore, the judgment of the Dallas Court of Appeals is reversed and the cause is remanded to the trial court for further proceedings. See Article 44.29(b).

WHITE, J., concurs in the result.

McCORMICK, J., dissents.

4. Cognizant that the court of appeals made its determination on remand prior to our decision in *Arnold,* as in like situations this Court has exercised its discretion in the interest of judicial economy to address the issue here rather than to remand again for reconsideration in light of *Arnold.*

From content of the two notes the court of appeals inferred "the jury considered how the good conduct time and parole law might be applied to the appellant in this particular case." *Smith,* 764 S.W.2d, at 33. That is strong evidence that a jury is working with the formula to fix a terms of years to compensate for parole eligibility. *Arnold,* at 306, 312, n. 24. However, the court of appeals also inferred from the first note alone that "the jury was considering a life sentence which was rejected in favor of a lesser sentence of sixty years." *Smith,* supra, at 33.

Given competing urgings of counsel for the parties, we have no doubt that the jury reviewed the entire range of available potential punishment from probation to the "maximum" of life

plus $10,000. Obviously jurors did not immediately opt for either extreme, so they turned to other possibilities. As the afternoon wore on, that the jury was considering application of aspects of the parole law in violation of the last paragraph of the §§ 4(a) and (b) instructions is manifested by its notes. From our analysis of the situation and for reasons given in the text, it is clear enough that if the jury were actually contemplating assessing a life sentence at all, its paramount concern was whether a life sentence would prevent appellant from being eventually released under the one-third rule. Not receiving any further guidance, jurors applied the rule as they understood it in an effort to ensure that appellant was not paroled until he had served at least twenty years.

" 'The evil to be avoided is the consideration by the jury of parole in assessing punishment.' *Rose v. State,* 752 S.W.2d 529, at 535. quoting *Clark v. State,* 643 S.W.2d 723, 725 (Tex.Cr.App. 1982)." *Arnold,* supra, at 299.