Russell WILLIAMS, Jr., Appellant,

v.

The STATE of Texas, State.

No. 2–94–197–CR.

Court of Appeals of Texas,
Fort Worth.

Dec. 14, 1994.

Douglas Wm. Wright, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., Betty Marshall and Charles Mallin, Asst. Chiefs of Appellate Sec:, M. Jason Ankele, Rose Anna Salinas, Larry Thompson, Asst. Crim. Dist. Attys., Fort Worth, for the State.

Before LATTIMORE, WEAVER and DAY, JJ.

## OPINION

LATTIMORE, Justice.

Appellant, Russell Williams, Jr., pled guilty to the offense of injury to a child by omission.[1] Williams also pled true to one enhancement count. Following an affirmative finding of the use of a deadly weapon, the court assessed punishment at forty years' confinement in the Institutional Division of the Texas Department of Criminal Justice. On appeal Williams raises one point of error, contending that the trial court erred in mak-

ing an affirmative finding of use of a deadly weapon.

We reform the judgment of the trial court, and affirm as reformed.

On the evening of April 8, 1991, Williams was home alone with his sixteen-month-old daughter, Brittany, who was asleep in her crib. According to his testimony, Williams heard a noise outside, picked up a .357 magnum handgun, and walked outside to investigate. Finding nothing suspicious, Williams returned to the livingroom in the back of the house, set the cocked gun down on the coffee table, and went briefly to a bedroom in the front of the house to look out the window. Shortly thereafter, Williams returned to the livingroom to find Brittany, now out of her crib, holding the gun by the barrel. Williams immediately grabbed the gun away from the child, but before he could uncock it, the gun discharged, striking Brittany in the face.

After the gun discharged, Williams "just stood there for a minute." He then found his truck keys and left the house carrying the gun. Williams drove to a house where his mother, Oma Lee Williams, was working, and told her Brittany was hurt. Williams' mother then called Sue Phillips, Brittany's maternal grandmother, who in turn called Elva Wells, Williams' neighbor, and told her that Brittany had been shot and was in the house by herself. Wells immediately called 911. Williams followed his mother to her house, went inside to unload the gun, and then drove back to his own home.

Approximately thirty to thirty-five minutes elapsed from the time of the shooting until firefighters arrived at the house. Kenneth Dean was one of the first firefighters on the scene. Dean found the house locked and the lights off. After neighbors informed him that an injured child was inside, Dean forcibly entered the house through the front door. Dean found Brittany in the hallway lying face-down in a pool of blood, moaning and gasping for air. Once stabilized, Medstar transported Brittany to a local hospital. John Stella, M.D., the facial surgeon who treated Brittany, testified that the bullet en-

---

1. Act approved June 16, 1977, 65th Leg., R.S., ch. 819, § 1, 1977 Tex.Gen.Laws 2067, 2067–68, *amended by* Act approved June 19, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex.Gen.Laws 3586, 3622 (current version at Tex.Penal Code Ann § 22.04(b) (Vernon 1994)).

tered near her left eye, destroying the drainage system. The bullet then progressed through the nasal cavity, shattering the nasal septum and the right sidewall of the nose. The bullet removed one-half of Brittany's upper jaw, including her palate teeth and the base of the sinus cavity in her cheekbone. About one-third of Brittany's tongue was damaged, and she lost one-third of her lower jaw, including teeth bones and the nerve that supplies feeling to her lips, teeth, and chin on the right side of her face. The exit wound from Brittany's face was evidenced by the loss of a two to three square inch area of soft tissue. Charles Elliott Webber, M.D., a general surgeon who also treated Brittany, testified that after the bullet left the child's head, it entered her body cavity, breaking her clavicle. The bullet then traveled behind Brittany's shoulder socket and fractured her scapula before it exited her body a second time.

Williams gave two statements to the police, each time admitting he left Brittany in the house while he went to find his mother. Williams was charged by indictment with (1) intentionally and knowingly causing serious bodily injury to a child by shooting her with a deadly weapon, (2) serious bodily injury to a child by omission for failing to immediately, timely, and adequately provide medical care for the child when she was in obvious need of medical care, and, as her father, he had a legal duty to provide such medical care, and (3) recklessly causing serious bodily injury to a child by leaving a loaded and cocked firearm within reach of the child, and by shooting the child with the firearm. The second count (serious bodily injury by omission) was followed by a paragraph alleging the use of a deadly weapon during the commission of the offense or in immediate flight from the offense.

Pursuant to a negotiated plea, Williams pled guilty to the second count, and true to one enhancement paragraph for a prior conviction for burglary of a vehicle. The plea was "open" to the court as there was no agreed punishment. In exchange for Williams' guilty plea, the State dismissed the first and third counts in the indictment. The trial court accepted Williams' plea, found him guilty of the offense, made an affirmative deadly weapon finding, and sentenced Williams to forty years' confinement.

■ In his sole point of error, Williams essentially contends the evidence is insufficient to support the trial court's affirmative finding of the use or exhibition of a deadly weapon because the State failed to show the offense of injury to a child by omission was facilitated by Williams' possession of a firearm.[2]

■ In reviewing the sufficiency of the evidence to support a conviction, the evidence is viewed in the light most favorable to the judgment. *Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex.Crim.App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Moreno v. State,* 755 S.W.2d 866, 867 (Tex. Crim.App.1988).

"This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979).

■ The sufficiency of the evidence is a question of law. The issue on appeal is not whether we as a court believe the State's evidence or believe that the defense's evidence outweighs the State's evidence. *See Matson v. State,* 819 S.W.2d 839, 846 (Tex. Crim.App.1991); *Wicker v. State,* 667 S.W.2d 137, 143 (Tex.Crim.App.), *cert. denied,* 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984). The judgment may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson,* 819 S.W.2d at 846.

---

**2.** In *Patterson v. State,* 723 S.W.2d 308 (Tex. App.—Austin 1987), *aff'd, Patterson v. State,* 769 S.W.2d 938 (Tex.Crim.App.1989), the Austin Court of Appeals found a similarly worded point of error, although stated as a sufficiency question, was essentially one of statutory construction. *Patterson,* 723 S.W.2d at 314. In this case, however, Williams does not appear to argue semantics, and we therefore focus our analysis on his factual claims.

■ Article 42.12, § 3g(a)(2) of the Texas Code of Criminal Procedure provides the following:

> (a) The provisions of Section 3 of this article [allowing court ordered community supervision] do not apply:
>
> . . . .
>
> (2) to a defendant when it is shown that a deadly weapon as defined in Section 1.07, Penal Code, was used or exhibited during the commission of a felony offense or during immediate flight therefrom . . . On an affirmative finding under this subdivision, the trial court shall enter the finding in the judgment of the court. On an affirmative finding that the deadly weapon was a firearm, the court shall enter that finding in its judgment.

TEX.CODE CRIM.PROC.ANN. art. 42.12, § 3g(a)(2) (Vernon Supp.1994). An affirmative deadly weapon finding does not affect the assessment of punishment. Instead, such a finding only affects a defendant's parole eligibility. *See* TEX.CODE CRIM.PROC. ANN. art. 42.18 (Vernon Supp.1994).[3]

■ A "deadly weapon" is defined in the Texas Penal Code as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX.PENAL CODE ANN. § 1.07(a)(17)(B) (Vernon 1994). In other words, there is no requirement that the defendant intend to cause serious bodily injury with the deadly weapon. It is sufficient that the instrument, as used by the defendant or as he intended its use, was capable of causing death or serious bodily injury. A gun, however, is not a deadly weapon per se. *See Ex parte Brooks,* 722 S.W.2d 140 (Tex.Crim.App.1986); *Ex parte Grabow,* 705 S.W.2d 150 (Tex.Crim.App. 1986). *Cf. Ex parte Franklin,* 757 S.W.2d 778 (Tex.Crim.App.1988) (shotgun was deadly weapon per se).

The record shows that a handgun was involved in the shooting of Williams' sixteen-month-old daughter. However, because of the negotiated plea, Williams was not charged with shooting the child. Instead, he was charged with injury by omission, *i.e.,* failing to immediately, timely, and adequately provide medical care for the child when she was in obvious need of medical care, and, as her father, he had a legal duty to provide such medical care. We concede there is evidence to show that Williams possessed a firearm during the "commission" of the offense of injury by omission, however, we decline to hold the mere possession of the firearm sufficient to support an affirmative deadly weapon finding as defined in article 42.12, § 3g.

In theory, *all* felonies are susceptible to an affirmative finding of use or exhibition of a deadly weapon. *Patterson,* 769 S.W.2d at 940. Indeed, even the offense of injury to a child by omission is susceptible to such a finding. *See Hill v. State,* 881 S.W.2d 897 (Tex.App.—Fort Worth 1994, pet. filed). Our analysis, therefore, must focus on whether Williams used or exhibited the firearm during the commission of the offense of injury by omission.

In *Patterson,* the court of criminal appeals analyzed the meaning of the words "use" and "exhibit" as those terms relate to article 42.12, § 3g. The Court determined that "used . . . a deadly weapon" during the commission of the offense means that the deadly weapon was employed or utilized in order to achieve its purpose. *Patterson,* 769 S.W.2d at 941. Whereas "exhibited a deadly weapon" means that the weapon was consciously shown or displayed during the commission of the offense. *Id.* The Court went further to explain that the term "use" constitutes any employment of a deadly weapon, even simple possession, if such possession facilitates the associated felony. *Id.* at 940. It is the concept of "facilitating" the associated felony to which Williams now complains is unsupported by the evidence.

We find it difficult to harmonize these well recognized definitions with the events that transpired in this case. The facts simply do

---

**3.** If a judgment contains an affirmative finding under article 42.12, § 3g(2)(a), a prisoner must serve a minimum of two years in jail and is not eligible for release on parole until his actual calendar time served, without consideration of good conduct time, equals one-half of the maximum sentence or thirty calendar years, whichever is less. TEX.CODE CRIM PROC ANN. art. 42.18, § 8(b)(3) (Vernon Supp.1994).

not support a finding that Williams "used" or "exhibited" a deadly weapon during the commission of the offense or immediate flight therefrom. It is true that Williams possessed a handgun when he left the injured child in the house. However, the gun was never employed or utilized in order to achieve its purpose. Conceivably, Williams could have "used" the gun to facilitate the associated felony by brandishing it, or threatening emergency personnel in an effort to prevent his injured daughter from receiving necessary care. But the record does not support that conclusion. Instead, Williams took the gun with him when he left in search of his mother, and later unloaded it at her house. Therefore, according to our reading of *Patterson*, mere possession of the gun, absent a showing that it was used to facilitate the associated offense (injury by omission), does not support an affirmative deadly weapon finding. Accordingly, point of error one is sustained.

Because this Court has the power to reform and correct the judgment of the trial court as the law and nature of the case may require, *see* TEX.R.APP.P. 80(b), we hereby reform the judgment and delete the affirmative deadly weapon finding.

As reformed, the judgment is affirmed.