Cindy Marie HOCUTT, Appellant,

v.

The STATE of Texas, State.

No. 2–95–533–CR.

Court of Appeals of Texas,
Fort Worth.

July 11, 1996.

Rehearing Overruled Sept. 12, 1996.

David Wacker, Law Offices of David Wacker, Denton, for appellant.

Bruce Isaacks, Criminal Dist. Atty., Yolanda M. Joosten, Vicki Foster, Earl Dobson, Asst. Dist. Attys., Robert Huttash, State Pros. Atty., Denton, for appellee.

Before LIVINGSTON, BRIGHAM and HOLMAN, JJ.

## OPINION

BRIGHAM, Justice.

Appellant Cindy Marie Hocutt was convicted by a jury of felony driving while intoxicated with two previous convictions. The jury then assessed punishment at confinement in the Institutional Division for the Texas Department of Criminal Justice for ten years. Hocutt brings three points of error, all of which pertain to the State's decision to seek a deadly weapon finding. Because we find that the State did not provide adequate notice of its intent to seek the special finding, we affirm the conviction but reverse and remand for new trial on punishment.

## BACKGROUND

Hocutt, while driving a station wagon, rear ended an automobile driven by truck driver Luther Conine on January 12, 1995. Although Conine and Hocutt's passengers were treated for minor injuries, no serious bodily injuries were caused by the accident. But Hocutt was arrested for public intoxication.[1]

On June 1, 1995, Hocutt was indicted on a charge of felony driving while intoxicated, and the indictment alleged two previous DWI convictions. The indictment tracked the language of the DWI statute but gave no indication that the State would seek a deadly weapon finding. The State faxed to Hocutt's attorney at 4 p.m. on Friday, November 3, 1995, its notice of intent to seek a deadly weapon finding[2]. The notice was filed with the clerk's office at 4:22 p.m. that same day.

---

1. The arresting officer testified that he arrested Hocutt for public intoxication because he had not seen her operating the car and that he planned to file a charge for driving while intoxicated later.

2. The notice of intent faxed to Hocutt did not indicate the nature of the deadly weapon alleged, but during a discussion before the punishment phase of the trial, it was made clear that the deadly weapon finding pertained to the automobile.

In a pretrial hearing the day of the trial, the court denied Hocutt's oral and written motions for continuance based on the State's late notice. Jury selection in Hocutt's trial began at 9 a.m. Monday, November 6, 1995 and concluded at 7 p.m. that same day. Trial on the merits began on November 7, 1995 and the jury found her guilty at the conclusion of that day. Trial on punishment began on November 8, 1995.

## POINT OF ERROR THREE

■ In her third point of error[3], Hocutt complains that the trial court erred by charging the jury at the punishment phase with a special issue in regard to the use of a deadly weapon in the commission of the offense because Hocutt was given untimely and insufficient notice of the State's intention to seek a deadly weapon finding. Hocutt contends that neither the indictment nor the notice of intent to seek a deadly weapon finding adequately apprised her of the State's intention to seek a finding that Hocutt's automobile was a deadly weapon.

The indictment charged Hocutt with driving while intoxicated:

CINDY MARIE HOCUTT, who is hereinafter styled defendant, on or about the 12th day of January, A.D., 1995 ... in the county and state aforesaid, did then and there drive and operate a motor vehicle in a public place, while the said defendant was then and there intoxicated, to-wit: not having the normal use of mental and physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, and a combination of two or more of those substances into the body, and having an alcohol concentration of 0.10 or more; ...

The indictment also alleged that Hocutt had two previous DWI convictions.

The notice of the State's intention faxed to defense counsel the Friday before trial on the merits began provided little illumination:

At trial, the State of Texas intends to submit to the jury a special issue asking whether or not the defendant used or exhibited a deadly weapon during the commission of an offense or during immediate flight therefrom.

Thus, the State's notice to defense counsel made no mention of the fact that the deadly weapon it sought to allege was the automobile. Additionally, neither the written motion for continuance, nor the oral motion made before jury selection began on November 6, 1995, specifies the nature of the deadly weapon. In fact, it appears that there was no mention of the automobile as the deadly weapon until opening statements during the punishment phase of the trial.

■ The affirmative finding of a deadly weapon delays a defendant's eligibility for parole. *Ex parte Patterson*, 740 S.W.2d 766, 773–74 (Tex.Crim.App.1987), *overruled on other grounds, Ex parte Beck*, 769 S.W.2d 525 (Tex.Crim.App.1989). Because of the fundamental nature of one's liberty interest in parole, a defendant is entitled to notice by written pleading if the State intends to seek a deadly weapon finding at trial. *Id.* at 775. Although such notice would most appropriately be included in the indictment, it need not necessarily be included there. *Brooks v. State*, 847 S.W.2d 247, 248 (Tex.Crim.App. 1993); *Luken v. State*, 780 S.W.2d 264, 266 (Tex.Crim.App.1989); *Patterson*, 740 S.W.2d at 776.

■ Hocutt does not argue that she failed to receive *any* notice. Rather, her complaint is that the notice she received, which included a blanket recitation the Friday before her Monday morning trial, was inadequate. Neither Hocutt nor the State has been able to provide any authority to demonstrate whether written notice given the Friday before a Monday trial is considered adequate notice, and our review of this issue leads us to conclude that the adequacy of such notice depends largely upon the specific facts of a given trial.

3. In her first point of error, Hocutt complains that the trial court abused its discretion in overruling her motion for a continuance based on the late notice. In her second point of error, Hocutt argues that the trial court erred in failing to exercise its equitable powers in denying her motion for continuance based on the late filing. Because of our analysis of point of error three, we have no need to address points of error one and two.

This court has held adequate notice mailed by the State to a defendant eleven days before the beginning of trial on punishment. *Spelling v. State*, 825 S.W.2d 533, 535 (Tex. App.—Fort Worth 1992, no pet.). However, in *Spelling*, the defendant was charged with and convicted of murdering her son "by committing an act clearly dangerous to human life, namely hitting him on the head." *Id.* at 534. There, the defendant was aware that she had been accused of causing death or serious bodily injury, and the State's intention to seek the deadly weapon finding could not have come as a surprise. Indictments which have alleged that death was caused by blows from "feet and hands," an "unknown object," a "knife," or "hot liquid" have been held to provide sufficient notice. *See Johnson v. State*, 815 S.W.2d 707 (Tex.Crim.App. 1991); *Mixon v. State*, 804 S.W.2d 107 (Tex. Crim.App.1991); *Speering v. State*, 797 S.W.2d 36 (Tex.Crim.App.1990); and *Gilbert v. State*, 769 S.W.2d 535 (Tex.Crim.App. 1989). Even an indictment which alleges "serious bodily injury ... by causing the motor vehicle to collide with a fixed object," has been held to provide sufficient notice. *Mitchell v. State*, 821 S.W.2d 420, 424 (Tex. App.—Austin 1991, pet. ref'd). Notably, however, these cases have all involved deaths or serious bodily injuries.

Here, Hocutt could reasonably have believed that the accident itself did not cause any serious injuries and that any enhanced punishment she might face was solely as a result of the two previous convictions. The notice faxed to counsel on Friday afternoon neglected to even mention the nature of the weapon sought to be proved. Although we decline to adopt any hard and fast rule requiring a minimum period of time necessary for the State to provide adequate notice of its intent to seek a deadly weapon finding, we conclude that here, the State failed to pro-

vide such notice as a result of its timing and inadequacy of its wording.

■ The State contends that Hocutt has failed to preserve error, because her written motion for continuance was unsworn. *See* TEX. CODE CRIM. PROC. ANN. art. 29.08 (Vernon 1989). The State also maintains that Hocutt's appellate argument that the notice was not specific enough to advise her that the deadly weapon sought to be proved was the automobile was not raised at the pretrial hearing and that Hocutt has not shown harm through surprise. *Patterson* makes it clear that failure to provide adequate notice of the State's intent to seek a deadly weapon finding is fundamental error. *Patterson*, 740 S.W.2d at 777–78. Thus, we do not find Hocutt's counsel waived this complaint through the way in which counsel sought the continuance.[4]

■ *Patterson* makes it clear that where a deadly weapon special issue is improperly submitted to the jury, the appellate court need not vitiate the conviction and sentence where that improper submission did not impact upon the determination of guilt or length of sentence. *Id.* at 778. Here, the special issue could not have had an impact upon the jury's determination for guilt because it was not mentioned to the factfinder until the trial on punishment began. This court has previously held that an affirmative deadly weapon finding does not affect the assessment of punishment but rather affects the defendant's parole eligibility. *Williams v. State*, 889 S.W.2d 687, 690 (Tex.App.—Fort Worth 1994, no pet.). But, we find the erroneous submission of the deadly weapon special finding in this instance akin to so-called "*Rose* error." *Rose v. State*, 752 S.W.2d 529, 554 (Tex.Crim.App.1988) (op. on reh'g).

After the *Rose* opinion was handed down, appellate courts were required to scrutinize the effect of an improper parole instruction.[5]

---

4. Notably, Hocutt's attorney objected to submission of a deadly weapon finding at the charge conference, and that objection was timely. Thus, even if Hocutt's attorney had waived the complaint that the trial court abused its discretion in refusing to grant the continuance, Hocutt could still argue that she preserved her complaint by objecting at the charge conference.

5. We recognize that two years after the *Rose* opinion held the parole instruction unconstitutional the Texas Constitution was amended to authorize such an instruction. *See* TEX. CONST. art. IV, § 11(a). But, during the period between *Rose* and the amendment to the constitution, appellate courts were required to conduct a harm analysis where the then-improper instruc-

Remand for resentencing was sometimes warranted when it appeared that the jury had considered the improper factor in assessing punishment:

> Patently, when a jury sends out a note making an inquiry of some sort related to parole, it reveals that jurors are then and there "discussing" and "considering" the subject. [citations omitted]. Such an important factor in the harm analysis cannot be easily dismissed. Whether a jury has progressed to the point of no return, so to speak, in the sense of "risk that punishment will be based on extraneous considerations," *Rose,* 752 S.W.2d at 537, depends on circumstances of a given case. But when it appears the jury passed the point, reasons for finding no risk and to justify the punishment must be more than a subjective view of the facts of the offense and a prior criminal record. [citation omitted].

*Smith v. State,* 830 S.W.2d 926, 928 (Tex. Crim.App.1991) (citing *Arnold v. State,* 786 S.W.2d 295, 305 (Tex.Crim.App.), *cert. denied,* 498 U.S. 838, 111 S.Ct. 110, 112 L.Ed.2d 80 (1990)).

Although *Rose, Arnold,* and *Smith* applied the harmless error analysis to an improper parole charge during the punishment phase of a trial, we find the reasoning instructive in an instance such as this, where the jury was confronted with an improperly submitted deadly weapon finding. Whether the "extraneous consideration" is that of parole or a deadly weapon finding matters little when a reviewing court attempts to determine whether the punishment phase of a trial was so tainted as to require remand.

Hocutt's jury was apparently concerned about the effect of a deadly weapon finding on the sentence, because it sent a note to the trial court during deliberations after the punishment phase of the trial asking about the "implications" and "purpose" of the special issue. The trial court responded that the jury had before it all of the law and evidence allowed in the case. The punishment range for this offense was confinement for two to ten years and a fine of up to $10,000. *See* TEX. PENAL CODE ANN. §§ 49.09(b), 12.34

(Vernon 1994). Hocutt received the maximum penalty of confinement allowed by law.

A jury note requesting specific information will strongly support an inference that the jury did indeed consider that which it should not have. *See Arnold,* 786 S.W.2d at 313. Under these facts, we cannot conclude beyond a reasonable doubt that the improperly submitted special issue made no contribution to the punishment assessed and was, therefore, harmless. TEX. R. APP. P. 81(b)(2).

Thus, because we sustain point of error three, we affirm the conviction and reverse and remand for new trial on punishment only.

tion was given to the jury and might have been a

factor in the assessment of punishment.