**Daniel NOLASCO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–96–00913–CR.**

Court of Appeals of Texas,
Dallas.

June 11, 1998.

John H. Hagler, Dallas, for Appellant.

Wendy Koster, Asst. Dist. Atty., Dallas, for State.

Before LAGARDE, KINKEADE and CHAPMAN, JJ.

## OPINION

KINKEADE, Justice.

Daniel Nolasco appeals his jury trial conviction of possession of four hundred grams or more of cocaine with the intent to deliver it. The court assessed punishment at fifteen years' confinement in the state penitentiary and a $250 fine. In three points of error, Nolasco claims that the evidence is legally and factually insufficient to support the conviction and that the State's written notice of its intent to seek an affirmative finding that a deadly weapon was used or exhibited during the commission of the offense was not timely. Because the evidence is legally and factually sufficient and the notice of the State's intent to seek the affirmative finding was timely, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Delia Torres, who had worked for the Texas Department of Public Safety as a paid confidential informant in drug cases for several years, informed Sergeant David Eldridge, a Department of Public Safety narcotics investigator, that she was dealing with a man named Raul (later identified as codefendant Raul Aguilar), who was capable of selling her multiple kilograms of cocaine. On Eldridge's instructions, Torres arranged to buy a kilogram of cocaine from Aguilar for $20,000 at 6:30 p.m., on December 6, 1995, on Commerce Street, near Fair Park. Aguilar told Torres that the owner of the cocaine would be with him. Eighteen thousand dollars of the purchase price was to go to the owner of the cocaine. The remaining two thousand dollars was Aguilar's fee for setting up the deal.

Aguilar and the appellant, Daniel Nolasco, arrived in a van at the agreed time and location. Torres conversed with Aguilar, in Nolasco's presence, about the cocaine transaction. Nolasco told Aguilar, in Spanish, that he did not want the cocaine to leave his presence without the money. Torres told them she would get the money from her nearby loft apartment. Nolasco handed the cocaine to Aguilar, who reassured Nolasco that he would be right back. Aguilar and Torres drove around the corner in Torres's car. They parked in front of a warehouse, and Torres got out of the car. Torres had been wired with a transmitting device so that Eldridge was able to hear the transaction.

Dallas Police Officer Michael Bird arrested Aguilar, who had a semi-automatic pistol in his waistband. Bird and several other offi-

cers then drove to the codefendants' van on Commerce Street. As Bird approached the van, he could see Nolasco handling a twenty-two caliber automatic pistol. Nolasco obeyed Bird's command to put the pistol on the floorboard. Both of the guns taken from the codefendants were loaded.

Forensic evidence revealed that the seized powder weighed one kilogram, including adulterants or dilutants, and that it was eighty-three percent pure cocaine. The State established through expert testimony that the cocaine was meant to be resold and that its street value was $400,000. The jury convicted Nolasco of possession of four hundred grams or more of cocaine with intent to deliver it, as charged in the indictment. The court assessed punishment at fifteen years' confinement in the state penitentiary and a $250 fine and made an affirmative finding that Nolasco used or exhibited a deadly weapon during the commission of the offense.

## SUFFICIENCY

In his first point of error, Nolasco contends that the evidence is legally insufficient to support his conviction for possession of cocaine with intent to deliver it. We assess legal sufficiency under the well-known standard of *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), viewing the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. The jury is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. The jury is free to accept or reject all or any part of a witness's testimony. *Bonham v. State*, 680 S.W.2d 815, 819 (Tex.Crim.App.1984), *cert. denied*, 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153 (1985); *Dumas v. State*, 812 S.W.2d 611, 615 (Tex.App.—Dallas 1991, pet. ref'd).

Nolasco specifically claims that the evidence is legally insufficient because the testimony of Delia Torres was not credible due to her status as a paid informant. Torres testified that she was paid $800 by the Department of Public Safety and $800 by the Dallas Police Department for her assistance on the case, that she had a criminal record, and that she was primarily motivated by money to be a confidential informant. The jury was free to believe Torres's testimony. A paid police informant is not an inherently untrustworthy witness. *Mann v. State*, 754 S.W.2d 371, 373 (Tex.App.—San Antonio 1988, no pet.). The evidence shows that Nolasco owned the cocaine. Nolasco handed the cocaine to Aguilar, to deliver to Torres, with the understanding that he momentarily would receive $18,000 for it. The evidence is legally sufficient to show that Nolasco possessed the cocaine with the intent to deliver it. We overrule Nolasco's first point of error.

In his second point of error, Nolasco contends that the evidence is factually insufficient to support his conviction. In assessing factual sufficiency, we review all the evidence without the prism of "in the light most favorable to the prosecution," setting aside the verdict only if it shocks the conscience, clearly demonstrates bias, or is so contrary to the overwhelming weight of the evidence as to be manifestly unjust. *Clewis v. State*, 922 S.W.2d 126, 129–35 (Tex.Crim.App.1996). Nolasco claims that the evidence is factually insufficient because, as a paid police informant, Torres was not credible. We, however, do not judge the credibility of witnesses in determining factual sufficiency. We must defer to the jury's finding that Torres was a credible witness. *Santellan v. State*, 939 S.W.2d 155, 164–65 (Tex.Crim.App.1997); *Scott v. State*, 934 S.W.2d 396, 399 (Tex.App.—Dallas 1996, no pet.). We overrule Nolasco's second point of error.

## NOTICE OF INTENT TO SEEK DEADLY WEAPON FINDING

In his third point of error, Nolasco contends that the State's written notice that it intended to seek an affirmative deadly weapon finding was untimely. The indictment merely alleges that Nolasco possessed cocaine with the intent to deliver it. On the day of trial, before voir dire, the State served Nolasco with written notice in the form of a special plea that it intended to seek a deadly weapon finding. At the pretrial hearing, No-

lasco objected to the timeliness of the notice and asked that the State be barred from seeking a deadly weapon finding. Nolasco did not ask for a continuance and admitted that he had knowledge of the weapon in the case, which was the subject of his motion to suppress and the basis of a pending misdemeanor weapon charge against him. Although the trial court initially granted Nolasco's motion, it later reversed its position and entered an affirmative finding that a deadly weapon was used or exhibited. Nolasco claims that the notice given a few hours before the trial began failed to comply with Texas Code of Criminal Procedure Article 42.12, section 3g(a)(2), and the due process requirements of the Fifth and Fourteenth Amendments.

■ An accused is entitled to some form of written notice at the time of prosecution that the use of a deadly weapon will be a fact issue at his trial. *Ex parte Beck*, 769 S.W.2d 525, 526–27 (Tex.Crim.App.1989); *Luken v. State*, 780 S.W.2d 264, 266 (Tex.Crim.App. 1989). The court of criminal appeals has never defined what constitutes timely notice. In a concurring opinion, Judge Overstreet suggested that notice is adequate if it is given anytime prior to trial. *See Johnson v. State*, 815 S.W.2d 707, 715 (Tex.Crim.App. 1991) (Overstreet, J., concurring). In the instant case, Nolasco received written notice of the State's special plea concerning a deadly weapon finding a few hours before trial began. Even as he objected to the timeliness of the notice, Nolasco admitted that he had knowledge of the weapon in the case and, in fact, had filed a motion to suppress it. On the same day he was indicted in this case, Nolasco was also charged with a related misdemeanor offense for unlawfully carrying the pistol. Nolasco makes no claim of surprise or prejudice. *See Hubbard v. State*, 809 S.W.2d 316, 323 (Tex.App.—Fort Worth 1991), *rev'd in part on other grounds*, 892 S.W.2d 909 (Tex.Crim.App.1995).

■ The notice of the State's special plea, given prior to the start of trial in this case, provided Nolasco with timely written notice that the use of a deadly weapon would be a fact issue in the case. Further, Nolasco's failure to request a continuance to remedy his perceived inadequate notice problem defeats any due process claim he might have. *See Whatley v. State*, 946 S.W.2d 73, 75–76 (Tex.Crim.App.1997) (defendant's failure to request specificity as to type of weapon used defeated any due process claim). We overrule Nolasco's third point of error.

We affirm the judgment of the trial court.