COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-07-167-CR

 

 

CAMERON RAY BYRD                                                          APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

              FROM
THE 355TH DISTRICT COURT OF HOOD COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I. Introduction








Appellant Cameron Ray Byrd
entered open pleas of guilty to the offenses of driving while intoxicated
subsequent offense, evading arrest or detention with a motor vehicle, and
unauthorized use of a motor vehicle.  Each
count was enhanced to a second degree felony by prior convictions, to which
Byrd pled true, and by an affirmative finding of the use of a deadly weapon, an
automobile.  The jury assessed punishment
at the maximum of twenty years= confinement on each count, and the trial court sentenced Byrd
accordingly, with the sentences to run concurrently.  Byrd complains on appeal that he was denied
due process because the State did not provide him with sufficient, timely, and
proper written notice of its intent to seek a deadly weapon finding. We will
affirm.

II. Background

On August 19, 2006, Byrd
stole a 1995 Mercury Cougar from the parking lot of a Sonic drive-in restaurant
in Hood County, Texas.  A witness saw
Byrd recklessly drive away in the car and immediately called 911.  Byrd fled from the responding police
officers, resulting in a police chase through multiple cities and at speeds up
to 115 miles per hour.  Law enforcement
officers laid spike strips in two separate locations in an attempt to end the
dangerous car chase.  Byrd ran over both
spike strips but continued driving for approximately three more miles before
stopping the car.  Byrd stopped the car
in a mobile home park and fled on foot, hiding from the officers underneath a
mobile home.  The officers found Byrd,
pulled him out from underneath the mobile home, and made the arrest.  No one was injured during the chase.








The indictment included
enhancement paragraphs based on Byrd=s prior convictions, but it did not allege that Byrd used a deadly
weapon during the commission of the charged offenses.  On February 22, 2007, the State faxed to Byrd=s defense counsel a notice of intent to seek a deadly weapon
finding.  On March 7, 2007, the State
faxed a second letter to counsel, reminding him of the notice of intent letter
faxed on February 22.  The State did not
file either letter with the trial court before trial commenced, nor did it
specify in either letter the exact nature of the alleged deadly weapon.[1]

On March 19, 2007, during
voir dire, the State addressed three times the issue concerning the use of a
car as a deadly weapon.  After the jury
was sworn in, the trial court admonished Byrd on his guilty pleas and specifically
told Byrd that the State was seeking a deadly weapon finding.  The trial court asked Byrd if he understood
that the State was seeking a deadly weapon finding and the resulting
ramifications, if proven.  Byrd responded
that he understood the admonishments and, with that knowledge, stated that he
still desired to plead guilty.  The trial
on punishment then commenced.








At the conclusion of the
first day of the punishment trial, counsel objected to any evidence regarding a
deadly weapon finding because, at that time, the State had not filed with the
trial court a notice of intent to seek a deadly weapon finding.  Counsel also had caselaw prepared to submit
to the trial court on the notice issue. 
The State responded by asserting that it had faxed counsel a notice of
intent and sent a subsequent fax to counsel, reminding him of the initial
notice.  The trial court overruled
counsel=s objection but agreed to look at counsel=s cases and revisit the issue if necessary.

At the beginning of the
second day of the punishment trial, the State filed with the court a notice of
intent to seek a deadly weapon finding, specifically stating that the deadly
weapon was the 1995 Mercury Cougar.  The
State attached both letters that were faxed to counsel as exhibits to the
notice of intent.  The trial court stated
that it had read the cases provided by counsel on the previous day and had also
conducted additional research on the issue. Based on its research, the trial
court concluded that the State had given notice to Byrd in Asome form,@ referencing
the two faxed letters to counsel. 
Counsel made no objection at that time to the filing of the notice of
intent.  Counsel did object, however, at
the close of the evidence, stating that the State had made an untimely filing
and that the faxed letters were not specific as to the nature of the deadly
weapon.  At no point did counsel request
a continuance in response to the deadly weapon allegation.








The trial court attached to
the jury charge the deadly weapon special issue, and the jury found that Byrd
had used the vehicle as a deadly weapon during the commission of the charged
offenses.  The jury assessed punishment
at twenty years= confinement
on each count in the indictment, and the trial court sentenced Byrd
accordingly.

III. Notice of Intent to Seek a Deadly Weapon Finding

Byrd argues that he was
deprived of his constitutional right to due process and due course of law under
the federal and Texas constitutions because the State filed an untimely,
improper, and insufficient notice of intent to seek a deadly weapon
finding.  See U.S. Const amends. V, XIV; Tex. Const. art. I, '' 13, 19.








A defendant is entitled to
notice that the State will seek an affirmative finding that a deadly weapon was
used during the commission of the charged crime.  Brooks v. State, 847 S.W.2d 247, 248
(Tex. Crim. App. 1993); Ex parte Patterson, 740 S.W.2d 766, 775 (Tex.
Crim. App. 1987), overruled on other grounds, Ex parte Beck, 769
S.W.2d 525, 528 (Tex. Crim. App. 1989). 
This notice is firmly rooted in fundamental precepts of due process and
due course of law.  Patterson, 740
S.W.2d at 774 n.7.  A defendant has the
right to be informed, at a bare minimum, that a particular proceeding, over and
above the determination of guilt and sentencing, will occur, which may operate
to further diminish the accused=s liberty interest.  Id.  The court of criminal appeals has never held
what constitutes timely notice in this context. 
We note, however, that the Court has recently held that the right to notice
of the State=s intent to use prior convictions as
enhancements, similar to notice given for deadly weapon allegations, is
constitutionally based and that due process does not require that notice of
prior convictions be given before the trial on guilt begins.  See Villescas v. State, 189 S.W.3d
290, 293B294 (Tex. Crim.
App. 2006) (stating that requiring notice to come before the trial on guilt
ignores the possibility that the trial court could take measures to cure the
notice problem by granting a continuance).








Regarding the type of notice
required to be given, the court of criminal appeals has held that a count in
the indictment containing a deadly weapon allegation sufficed to give a
defendant notice of the State=s intent to seek an affirmative finding of the use of a deadly
weapon.  Beck, 769 S.W.2d at 526B27.  Shortly after Beck,
the Court reaffirmed its decision in Patterson and held that the State
must plead its notice of intent to seek an affirmative finding of the use of a
deadly weapon.  See Luken v. State,
780 S.W.2d 264, 266B67 (Tex.
Crim. App. 1989).  The Court then held
that notice need not be contained in the indictment; rather, a defendant is
simply entitled to written notice in some form that the use of a deadly weapon
will be a fact issue at trial.  Brooks,
847 S.W.3d at 248; see also Ex parte Minott, 972 S.W.2d 760, 761 (Tex.
Crim. App. 1998) (citing Brooks and concluding that although he had not
received written notice of any kind and the indictment did not contain
reference to a deadly weapon, the defendant had received actual notice when he
pled guilty as part of a plea agreement that included an affirmative finding of
a deadly weapon); Sanders v. State, 963 S.W.2d 184, 188 (Tex. App.CCorpus Christi 1998, pet. ref=d) (A[Notice]
must be in writing and reasonably calculated to inform the defendant [that] the
use of a >deadly
weapon will be a fact issue at the time of prosecution.=@).  In any event, the adequacy
of constitutional notice of the State=s intent to seek a deadly weapon finding depends largely on the
specific facts of a given case.  Hocutt
v. State, 927 S.W.2d 201, 203 (Tex. App.CFort Worth 1996, writ ref=d).








In this case, it is
undisputed that the State faxed and Byrd=s counsel received two letters regarding the State=s notice of intent to seek a deadly weapon finding, the first of which
the State sent approximately one month in advance of trial.  Also, on the first day of trial, counsel had
caselaw prepared to submit to the trial court specifically addressing the issue
of the requirement that the notice of intent be filed with the trial
court.  Further, Byrd twice admitted to
the trial court that he understood the State was alleging that he had committed
the offenses with the use of a deadly weapon. 
Although Byrd argues that, based on the advice of his defense counsel,
he Amerely agreed@ with the
trial court that the State intended to prove that he committed the offenses
with a deadly weapon because he believed that the State had failed to properly
file the notice, the record does not support this claim.

This is not a case in which
the defendant learned of the State=s intent to seek a deadly weapon Aonly after all the evidence was in, both sides had closed, and the
charge was read to the jury.@  See Patterson,
740 S.W.2d at 777.  Defendants, like that
in Patterson, are in effect Ablindsided@ because
they have Ano prior
indication that the nature of the weapon used was to be a particular issue in
the case.@  See Whately v. State, 946 S.W.2d 73,
75B76 (Tex. Crim. App. 1997); Patterson, 740 S.W.2d at 777.  But here, we cannot say that Byrd was
blindsided by the deadly weapon special issue in this case because he had more
than an Aindication@ of the
State=s intent; he had written notice that the State intended to seek a
deadly weapon finding approximately one month before trial.  See Brooks, 847 S.W.3d at
248.  And to satisfy the pleading
requirement, the State filed the notice with the trial court to support the
special issue submitted to the jury.  See
Luken, 780 S.W.2d at 266B67; Patterson, 740 S.W.2d at 766B67.








Byrd=s due process claim is also weakened by his failure to ask for a
continuance to relieve any surprise or prejudice.  See Whatley, 946 S.W.2d at 76B77; Nolasco v. State, 970 S.W.2d 194, 197 (Tex. App.CDallas 1998, no pet.).  Indeed,
we find little merit in this due process claim when Byrd, confronted with the
issue of the deadly weapon allegation during the trial court=s admonishments, could have, but did not, request a continuance.  Instead, he admitted that he understood the
State was seeking a deadly weapon finding because he knew that the notice,
which he received twenty-seven days earlier and on which he had prepared
defense, was not filed.  See Whatley,
946 S.W.2d at 76B77; Nolasco,
970 S.W.2d at 197.

In sum, under the facts of
this case, the State=s notice
faxed to Byrd on February 22, 2007, gave Byrd adequate written notice of its
intent to seek a deadly weapon finding. 
And, Byrd=s failure to
ask for a continuance defeats any due process claim he might have had.  See Nolasco, 970 S.W.2d at 197.  Given these factual circumstances, the timing
of the formal filing on the second day of trial did not violate Byrd=s right to due process.[2]













Byrd also claims that his due
process rights were violated because the State failed to adequately apprise him
of the exact nature of the deadly weapon allegation.  Citing Hocutt, a prior decision from
this court, Byrd contends that because the State did not specify the nature of
the deadly weapon in the faxed notices, he reasonably believed that any
enhanced punishment he might have received was a result only of his prior
convictions.  See 927 S.W.2d at
203.         In Hocutt, the
defendant, charged with driving while intoxicated, caused an accident with
another vehicle, resulting in minor injuries to the passengers of both
vehicles.  See id. at 202.  The State faxed and filed notice letters
three days before trial but did not specify the nature of the deadly weapon,
the automobile.  Id. at 203.  We held that the State=s notice was inadequate because the State gave written notice only
three days before trial, there were no serious bodily injuries that resulted
from the accident, a car is not a deadly weapon per se, and the notice was not
specific as to the nature of the deadly weapon. 
See id. at 204. 
Like in Hocutt, there were no injuries resulting from Byrd=s use of the vehicle, and the faxed notices did not specify the type
of deadly weapon involved.  However,
unlike in Hocutt, Byrd never requested a continuance.  See id. at 203.  As held in Whately, when the defendant
is not blindsided by the deadly weapon allegation and the defendant fails to
request a continuance, there is no fundamental unfairness by failing to specify
the type of weapon involved.  946 S.W.2d
at 75B76.  Thus, because Byrd failed
to request a continuance and was not surprised or blindsided by the notice of
intent, we hold that Byrd=s claim that
the he was prejudiced by the lack of specificity in the notice must fail.  See id.








We do not hold as a general
rule that notice formally filed by the State on the second day of trial or
lacking specificity as to the type of weapon used is constitutionally
adequate.  Rather, we hold that Byrd=s due process rights were not violated when he received written notice
twenty-seven days before trial, which the State eventually filed with the trial
court; admitted that he understood that the State was seeking a deadly weapon finding;
had a prepared defense ready on the first day of trial concerning the issue of
filing the notice as a pleading; and failed to ask for a continuance at any
time before or during the trial. 
Accordingly, we overrule Byrd=s sole issue.[3]

IV. Conclusion

Having overruled Byrd=s sole issue on appeal, we affirm the trial court=s judgment.

 

 

DIXON W. HOLMAN

JUSTICE

 

PANEL: CAYCE, C.J.; HOLMAN and WALKER, JJ.

CAYCE, C.J. and WALKER, J. concur without
opinion.       

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

DELIVERED: 
August 29, 2008











[1]The first letter faxed to counsel
on February 22, 2007, states in part: AThis letter serves as notice to you that the State intends
to seek a deadly weapon finding in the above-mentioned cause against your
client.@ 
The second letter faxed to counsel on March 7, 2007, states in part: AThe State will make no offer on the
above-mentioned case.  Following please
find the letter dated February 22, 2007, wherein the State pulled the previous
offer and gave deadly weapon notice.@





[2]We acknowledge the holding in a
similar case, Randle v. State, in which the court of appeals held that a
notice letter prepared by the State two days prior to trial and filed on the
day of trial was insufficient notice to the defendant of the State=s intent to seek a deadly weapon
finding.  See No. 01-91-00793-CR,
1994 WL 168267 at *2 (Tex. App.CHouston [1st Dist] May 5, 1994, writ ref=d) (not designated for
publication).  Relying on the requirement
stated in Luken that the State must plead the notice, the court stated
that A[a]ssuming the May 6 letter was
otherwise sufficient as a pleading, it was not filed before the date trial
commenced.@ 
Id. (citing article 28.10(a) of the Texas Code of Criminal
Procedure, providing that, after notice and upon request, a defendant is allowed
not less than ten days to respond to an amended indictment or information).

We first note that,
unlike Randle, in which the State Aprepared@ a letter two days prior to trial that might not have even
reached the defendant by the date of trial (an issue not addressed by the
court), the State, in this case, sent written notice via facsimile twenty-seven
days before the start of trial.  See
id.  And, it is also undisputed that
Byrd=s counsel received both notice
letters.  Presumably, even if the State,
in Randle, had actually filed the letter with the trial court two days
before trial, notice still might not have been timely.  See Hocutt, 927 S.W.2d at 202, 204
(holding that notice of intent to seek a deadly weapon finding filed three days
before trial was untimely).  Secondly, we
note that notice of intent to seek a deadly weapon finding is not governed by
article 28.10.  See Tex. Code Crim. Proc. Ann. art. 28.10
(Vernon 2006).  Notice of a deadly weapon
allegation, similar to notice of enhancements based on prior convictions, which
must also be pled, is based in the constitution, not the statutes.  See Villescas, 189 S.W.3d at 294;
see also Patterson, 740 S.W.2d at 774 n.7 (A[Notice
of the State=s
intent to seek a deadly weapon finding] is that firmly rooted in fundamental
precepts of due process and due course of law.@).





[3]We note that in Throneberry v.
State we came to a different conclusion when the State gave written notice
to the defendant through an informal letter over one year in advance of trial
that it intended to use prior convictions to enhance the defendant=s punishment.  109 S.W.3d 52, 59B60 (Tex. App.CFort Worth 2003, no pet.).  However, unlike here, the State in Throneberry
never filed the notice with the trial court as a pleading but instead admitted
the letter into evidence at the end of the guilt-innocence phase.  See id. at 59.